KATHLEEN E. OLLER *v.* CAROLANNE M. OLLER-CHIANG ET AL.
(14905)

PETERS, C. J., BERDON, NORCOTT, KATZ and PALMER, Js.

Argued June 7—decision released August 16, 1994

*Lawrence W. Berliner,* with whom was *Michelle F. Murphy,* for the appellant (respondent).

*Lawrence D. Church,* for the appellees (defendants).

*Marc Greidinger* and *David C. Shaw* filed a brief for the Association for Retarded Citizens of Connecticut, Inc., et al., as amici curiae.

BERDON, J. This appeal presents our first opportunity to consider whether the Guardians of Mentally Retarded Persons Act (act), General Statutes §§ 45a-668 through 45a-684,[1] mandates the presence in court of

---

[1] The portions of the act that are relevant to this appeal provide as follows:

"[General Statutes] Sec. 45a-669. (Formerly Sec. 45-321). DEFINITIONS. For purposes of sections 45a-668 to 45a-684, inclusive, the following terms shall have the following meanings:

"(a) 'Plenary guardian of a mentally retarded person' means a person, legally authorized state official, or private nonprofit corporation, except a hospital or nursing home as defined in section 19a-521, appointed by a court of probate pursuant to the provisions of sections 45a-668 to 45a-684,

the person for whom appointment of a guardian is sought, the respondent, and requires the court to ascer-

inclusive, to supervise all aspects of the care of an adult person, as enumerated in subsection (d) of section 45a-677, for the benefit of such adult, who by reason of the severity of his mental retardation, has been determined to be totally unable to meet essential requirements for his physical health or safety and totally unable to make informed decisions about matters related to his care.

"(b) 'Legally competent' means having the legal power to direct one's personal and financial affairs. All persons in this state eighteen years of age and over are legally competent unless determined otherwise by a court in accordance with the provisions of sections 45a-668 to 45a-684, inclusive, or unless otherwise provided by law.

"(c) 'Limited guardian of a mentally retarded person' means a person, legally authorized state official, or a private nonprofit corporation, except a hospital or nursing home as defined in section 19a-521, appointed by a court of probate pursuant to the provisions of sections 45a-668 to 45a-684, inclusive, to supervise certain specified aspects of the care of an adult person, as enumerated in subsection (d) of section 45a-677, for the benefit of such adult, who by reason of the severity of his mental retardation, has been determined to be able to do some, but not all, of the tasks necessary to meet essential requirements for his physical health or safety or to make some, but not all, informed decisions about matters related to his care.

"(d) 'Mentally retarded person' means a person who has a condition defined as mental retardation pursuant to section 1-1g.

"(e) 'Respondent' means an adult person for whom an application for guardianship or limited guardianship of the person has been filed. . . ."

"[General Statutes] Sec. 45a-671. (Formerly Sec. 45-323). HEARING. NOTICE REQUIREMENTS. (a) Within forty-five days of filing such application in the court of probate, such court shall assign a time and place for hearing such application. Notwithstanding the provisions of section 45a-7, the court may hold the hearing on said application at a place within the state other than its usual courtroom if it would facilitate the presence of the respondent. . . ."

"[General Statutes] Sec. 45a-675. (Formerly Sec. 45-327). RIGHT OF RESPONDENT TO BE AT HEARING. The respondent shall be present at any hearing for his guardianship, provided the court may exclude him from such portions of the hearing at which testimony is given which the court determines would be seriously detrimental to his emotional or mental condition. . . ."

"[General Statutes] Sec. 45a-676. (Formerly Sec. 45-328). APPOINTMENT OF PLENARY GUARDIAN OR LIMITED GUARDIAN BY COURT. WRITTEN ACCEPTANCE OF GUARDIANSHIP. PROBATE BOND. FINDINGS OF COURT. APPOINTMENT OF EMPLOYEE OF DEPARTMENT OF MENTAL RETARDATION AS PLENARY GUARDIAN OR LIMITED GUARDIAN. (a) If the court finds, by clear and con-

tain the respondent's preference as to who should be appointed. More specifically, we address the following

vincing evidence, that the respondent is, by reason of the severity of his mental retardation, totally unable to meet essential requirements for his physical health or safety and totally unable to make informed decisions about matters related to his care, the court shall appoint a plenary guardian or plenary coguardians of the mentally retarded person who shall have all those powers and duties provided for in section 45a-677.

"(b) If the court finds by clear and convincing evidence that the respondent is able to do some, but not all, of the tasks necessary to meet essential requirements for his physical health or safety or that the respondent is able to make some, but not all, informed decisions about matters related to his care, the court shall appoint a limited guardian or limited coguardians of the mentally retarded person. . . .

"(f) In selecting a plenary guardian or limited guardian of the mentally retarded person, the court shall be guided by the best interests of the respondent, including, but not limited to, the preference of the respondent as to who should be appointed as plenary guardian or limited guardian. . . ."

"[General Statutes] Sec. 45a-677. (Formerly Sec. 45-329). PLENARY GUARDIAN OR LIMITED GUARDIAN. POWERS AND DUTIES. ANNUAL REPORT TO PROBATE COURT. (a) The court may assign to a limited guardian of the mentally retarded person any portion of the duties and powers listed in subsection (d) of this section for those particular areas in which the respondent lacks the capacity to meet the essential requirements for his physical or mental health or safety.

"(b) A limited guardian may also be assigned the duty to assist the respondent in those particular areas in which the capacity of such person to meet the essential requirements of his physical or mental health or safety, protect his rights, obtain necessary services, or to fulfill his civil duties is impaired, as well as in other ways not specifically prohibited by sections 45a-668 to 45a-684, inclusive.

"(c) A limited guardian of the mentally retarded person shall have only such of the duties and responsibilities and powers of a guardian of the mentally retarded person under subsection (d) of this section as the court shall specify based upon its findings with regard to the individual need of the respondent for supervision. . . .

"(d) The court may assign to a limited guardian the custody of the ward for the purpose of exercising any, but not all, of the following limited duties and powers, in order to assist the ward in achieving self-reliance: (1) To assure and consent to a place of abode within a facility operated or licensed by the department of mental retardation, (2) to assure and consent to a place of abode with a privately or commercially operated facility not licensed by the department of mental retardation, (3) to consent to specifically designed habilitative and educational programs, (4) to consent to the release of clinical records and photographs of the ward, (5) to consent to specifi-

principal issues: (1) whether the act requires that the respondent be present at any court hearing concerning the appointment of a guardian; (2) whether the respondent may waive his or her presence and, if so, the necessary requirements for such a waiver; and (3) whether, in determining what is in the best interests of the respondent, the judge must ascertain the respondent's preference as to who should be his or her guardian.[2]

In 1989, Anne Oller (defendant) and Walter Oller sought, by application to the Probate Court for the district of Brookfield, to be named limited guardians of their daughter, Kathleen E. Oller, the respondent in this case, in order to make decisions about her "physical and mental care."[3] The respondent is a thirty-one

cally designed behavioral intervention programs, (6) to assure and consent to routine medical and dental care, (7) to assure and consent to elective and emergency medical and dental care, including the use of anesthesia, (8) other specific limited powers to assure and consent to services necessary to develop or regain to the maximum extent possible the ward's capacity to meet essential requirements. All plenary and limited guardians appointed pursuant to sections 45a-668 to 45a-684, inclusive, shall also have a duty to assure the care and comfort of the ward within the limitations of their appointment, and within the limitations of the resources available to the ward either through his own estate or by reason of private or public assistance. . . ."

"[General Statutes] Sec. 45a-680. (Formerly Sec. 45-332). APPOINTMENT OF STANDBY PLENARY GUARDIAN OR STANDBY LIMITED GUARDIAN. PROBATE BOND. DUTIES. CONFIRMATION BY COURT. Whenever a court of probate appoints a plenary guardian or limited guardian of the mentally retarded person, such court may appoint a standby plenary guardian or a standby limited guardian of the mentally retarded person. Such standby shall act if the appointed plenary guardian or limited guardian of the mentally retarded person dies, becomes incapable, or renounces his plenary guardianship or limited guardianship. . . ."

[2] These issues were first raised in briefs filed by amici curiae, the Association for Retarded Citizens of Connecticut, Inc., and the Western Connecticut Association for Human Rights, Inc., and were adopted by counsel for the respondent-appellant in oral argument before this court.

[3] Walter Oller is also a defendant, as is the respondent's sister, Carolanne Oller-Chiang, who was appointed standby guardian. For convenience, we shall refer solely to Anne Oller, the appointed guardian, as the defendant.

year old woman with mental retardation. The parties agree that she requires a limited guardian to make decisions regarding her medical and dental care and the release of medical records. They disagree, however, over whether the defendant is the proper person to assume such a role.[4]

The Probate Court approved the application and appointed the defendant limited guardian, and the respondent appealed the decision to the Superior Court. After a trial de novo,[5] the Superior Court adopted the findings of the Probate Court, dismissed the appeal and appointed the defendant limited guardian of the respondent, her daughter. The respondent appealed from the

---

[4] The controversy over the defendant's appointment stemmed from a report filed in 1986 by the state office of protection and advocacy for handicapped and developmentally disabled persons. An investigator from that office accused the defendant's other children of improperly restraining the respondent "when necessary" by tying her in a chair with a belt, clothing or clothesline.

[5] We have held generally that on a probate appeal, the Superior Court may not consider events that transpired after the Probate Court hearing. *Gardner* v. *Balboni,* 218 Conn. 220, 225, 588 A.2d 634 (1991). Nevertheless, we hold that this rule is inapplicable to an appeal of the appointment of a guardian under the act because the statute directs that the best interests of the respondent must be determined when deciding whether to appoint a guardian and who should be appointed. General Statutes § 45a-676 (f); see *Cappetta* v. *Cappetta,* 196 Conn. 10, 17, 490 A.2d 996 (1985) (upon reversing an order granting custody of a minor child to the paternal grandmother, this court directed the trial court to consider, on remand, "further information about the parents' relationship to the child during the pendency of this appeal" in determining what would be in the child's best interests). In this case, the Superior Court hearing on the guardianship application occurred three years after the Probate Court's appointment of the defendant as limited guardian, and the Superior Court confined its consideration to events that predated the Probate Court hearing. On remand, the Superior Court, in making its determination as to who shall be selected the limited guardian, should receive all relevant evidence pertaining to the best interests of the respondent without regard to the date of the Probate Court hearing. Parenthetically, we note that the three years it took to resolve this matter in the Superior Court was an unusually long time, especially in view of the fact that appeals from Probate Court are privileged. See General Statutes § 52-192.

judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The trial in the Superior Court lasted almost an entire day. The respondent was not present, although she had been present when the matter was heard by the Probate Court. At the Probate Court hearing, she had expressed her desire not to have the defendant appointed as her guardian. In the Superior Court, the respondent's attorney attempted to introduce into evidence the statement of her preference that the respondent had made in the Probate Court, but the Superior Court excluded this evidence on the ground that it was hearsay.

It was not until the attorneys offered closing arguments late in the afternoon that the issue of the respondent's presence was raised. In making his summation, the defendant's attorney noted that the respondent herself had not attended the hearing. He argued that the court should infer from the respondent's absence that she would have chosen to have her mother appointed as guardian. In response to a question from the court regarding General Statutes § 45a-675, which provides that "[t]he respondent shall be present at any hearing for his guardianship," the respondent's lead attorney admitted that he did not know why the respondent was not in the courtroom. The respondent's court-appointed attorney then told the court that "it was a professional opinion that she not be exposed to this." Subsequently, the attorneys for both sides purported to waive any requirement that she be present for the hearing:

"The Court: Okay. Well, I just asked if Counsel for the respondent can represent to the Court that they are authorized to waive what seems to be [the] very strong language of [§ 45a-675] and that the [presence] of the respondent is waived as far as any jurisdictional

claim . . . that the respondent had to be present in order for the Court to respond to the issues in this case.

"Ms. Murphy [respondent's court-appointed attorney]: Yes, Your Honor.

"The Court: Okay. Just so we have it for the record and there's no objection from the defendant as well as far as the waiving the presence of the respondent; is that correct, Mr. Church?

"Mr. Church [defendant's attorney]: There's no objection, I waive the presence of the respondent . . . ." In its oral decision,[6] the court gave effect to these waivers by stating that the "Court notes that the parties have waived the presence of the respondent."

In addition, the attorneys raised questions in their summations about whether the preference for a guardian that the respondent had expressed in the Probate Court had been properly excluded from evidence. In his closing argument, the lead attorney for the respondent noted that the court, in selecting a limited guardian, was to be guided by the best interests of the respondent, "including, but not limited to, the preference of the respondent. I might add just [by] way of footnote, there was a preference established for the Probate Court; however, we were unable by virtue of [a] hearsay objection to state that preference." Later, the attorney noted that "[t]he Court is prevented from learning the [respondent's] preference by virtue of a proper hearsay objection and we were prepared to tell the Court what that preference was—Defendant properly objected to that and the Court is not informed by vir-

---

[6] General Statutes § 45a-676 (e) provides in relevant part: "The court shall make *written* findings of fact which support each grant of authority to the plenary guardian or limited guardian." (Emphasis added.) In light of our conclusion, infra, that the provisions of the act are mandatory rather than directory, this requirement of written findings should be followed by the trial court on remand.

tue of defendant's objection." In its oral decision, the court noted that "[t]he Court has heard no evidence [of] the preference of the respondent."

On appeal, the parties disagree principally over whether the court had sufficient evidence before it to find that the respondent's mother was a proper person to be named the respondent's limited guardian. At oral argument, however, counsel for the respondent agreed that the issues initially brought to this court's attention by the amici curiae in this case are significant and should be decided. These issues arise under the act and require a consideration of whether:[7] (1) the respondent was required to be present at the hearing, absent a valid waiver of that right; (2) the court improperly allowed the attorneys to waive the respondent's right to be present; and (3) the court, after allowing the waiver, failed to ascertain the respondent's preference or attach adequate weight to it. Because of the importance of these issues, and because critical errors in the procedural aspects of the hearing would render irrelevant the substantive sufficiency of the evidence arguments made by the parties, we now address and decide this case on the basis of the issues raised by the amici[8] and adopted by the respondent at oral argument.

We review these issues in light of the obvious purpose and policy of the act, which is to provide for the appointment of a guardian to act for the respondent while protecting the constitutional rights of the respon-

---

[7] The amici also contend that the actions of the trial court violated the respondent's constitutional right to due process. Because we decide these issues by interpreting the act, we do not reach the constitutional arguments. See *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 270, 524 A.2d 621 (1987).

[8] Compare *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 571, 578, 522 A.2d 763 (1987) (adopting the view of amicus curiae, the Connecticut Attorneys Title Insurance Company, that General Statutes § 49-31b [a] created a "safe harbor" rather than an exclusive means for creating a valid mortgage instrument).

dent and ensuring that the court makes its determination based on his or her best interests. General Statutes § 45a-676 (f). Guardians appointed by the court, whether limited[9] or plenary,[10] can be vested with substantial powers over a respondent.[11] Therefore, to the extent that such powers are granted, the appointment of a guardian implicates a respondent's fundamental constitutional rights to liberty and privacy.

"Historically, the notion that a declaration of incompetence is in the best interest of the affected individual has resulted in the parens patriae power being exercised in an atmosphere of procedural informality. . . . Task Panel, President's Commission on Mental Health, Mental Health and Human Rights: Report of the Task Panel on Legal and Ethical Issues (1978), reprinted in 20 Ariz. L.R. 49 (1978) . . . . The beneficial motives behind guardianship obscured the fact that guardianship necessarily entails a deprivation of the fundamental liberty to go unimpeded about one's ordinary affairs. . . . By contrast, while similar rights are involved in criminal proceedings, there has been no comparable facade of beneficence, and exercise of the police power has always been tempered with strict procedural safeguards." (Citations omitted.) *In re Link*, 713 S.W.2d 487, 493 (Mo. 1986). In 1982, our legislature adopted the act in order to protect the rights of individuals with mental retardation when decisions are to be made that are of vital concern to their lives. The legislative history underscores the legislature's intent. The act was "drafted to protect the rights of the mentally retarded"; Conn. Joint Standing Committee Hearings, Judiciary, 1982 Sess., p. 414, remarks of Linda Dow, assistant to the Probate Court administrator; and its provisions are meant to provide "due process pro-

---

[9] See footnote 1, General Statutes § 45a-669 (c).

[10] See footnote 1, General Statutes § 45a-669 (a).

[11] See footnote 1, General Statutes §§ 45a-676 and 45a-677.

tections to the person [for] whom guardianship is being sought . . . ." Id., p. 351, remarks of Gareth Thorne, commissioner of the department of mental retardation.

## I

As noted above, § 45a-675, entitled "Right of respondent to be at hearing," provides in part that a "respondent *shall be present* at any hearing for his guardianship . . . ." (Emphasis added.) In light of the respondent's absence from the Superior Court proceedings in this case, we must decide whether the legislature's use of the word "shall" in § 45a-675 mandates that the respondent in a guardianship proceeding must be present at any hearing that is held, absent either a valid waiver or a specific finding that attending the hearing "would be seriously detrimental to [the respondent's] emotional or mental condition." General Statutes § 45a-675.[12]

We have noted in past decisions that the use of the word "shall," though significant, does not invariably establish a mandatory duty. *Hall Manor Owner's Assn.* v. *West Haven,* 212 Conn. 147, 152, 561 A.2d 1373 (1989); see *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985). "The test we have adopted for determining whether such a statutory requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates

---

[12] It is clear from the record that the explicit statutory exemption for the respondent's presence—a determination by the court that the testimony would be "seriously detrimental" to the respondent—was not established in this case. No witnesses testified, nor were there any reports from mental health professionals, concerning the effect that the hearing would have on the respondent's "emotional or mental condition." The respondent's court-appointed attorney's naked assertion that "it was a professional opinion that she not be exposed to this" is insufficient to establish that the hearing would have been "seriously detrimental" to the respondent. Indeed, the trial court did not even inquire into the respondent's absence until late in the guardianship proceeding, nor did it make any findings regarding the reasons for her absence.

to matter material or immaterial—to matters of convenience or of substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory." (Citations omitted; internal quotation marks omitted.) *Hall Manor Owner's Assn.* v. *West Haven,* supra, 152–53.

In *Mahoney* v. *Lensink,* 213 Conn. 548, 569 A.2d 518 (1990), we used these canons of construction to interpret a statute addressing the civil rights of persons who are mentally ill.[13] We noted that the statute, which was part of the patients' bill of rights, illustrated "the breadth of the legislative concern for the fair treatment of mental patients." Id., 556. We therefore held that a statutory provision stating that no person treated in a mental health facility " 'shall be deprived of any . . . civil rights' " was substantive in nature, and that the word "shall" was mandatory. Id., 557 and n.11.

Like the statute at issue in *Mahoney,* § 45a-675 is concerned with protecting the rights of individuals with mental difficulties. As discussed above, the legislative history strongly suggests that the act was adopted to protect the constitutional rights and promote the best interests of a respondent. Moreover, the fact that the act requires that clear and convincing evidence support the finding of a need for a guardian demonstrates the legislature's judgment that " 'important individual rights are involved' " in guardianship proceedings. *State* v. *Davis,* 229 Conn. 285, 294, 641 A.2d 370 (1994); see also *Cookson* v. *Cookson,* 201 Conn. 229, 234, 514 A.2d 323 (1986). We therefore conclude that the act's provisions are mandatory.

---

[13] The statute in question, General Statutes (Rev. to 1989) § 17-206b, provided that "[n]o patient . . . treated in any public or private facility for the treatment of the mentally disordered *shall* be deprived of any personal, property or civil rights . . . ." (Emphasis added.) *Mahoney* v. *Lensink,* supra, 213 Conn. 557.

The remaining provisions of the act support our conclusion that we must interpret the presence requirement of § 45a-675 as mandatory. "We make every effort to construe a statutory scheme as a consistent whole"; *Powers* v. *Ulichny,* 185 Conn. 145, 149, 440 A.2d 885 (1981); with a goal of "reconciling its separate parts in order to render an overall reasonable interpretation." *Shortt* v. *New Milford Police Dept.,* 212 Conn. 294, 305, 562 A.2d 7 (1989). Section 45a-671 (a) makes clear that the presence of a respondent is an invaluable part of the guardianship proceedings under the act. That section allows the court to "hold the hearing on said application at a place within the state other than its usual courtroom *if it would facilitate the presence of the respondent.*" (Emphasis added.) The legislative message of § 45a-671 (a) is clear—a judge hearing an application for guardianship under the act should make every reasonable effort to include the individual with mental retardation in a proceeding that could significantly affect his or her life. Moreover, § 45a-676 (f) requires the court to consider a respondent's preference about who should be his or her limited guardian. Clearly, the presence of a respondent in court would facilitate this determination.[14]

Finally, we note that our interpretation of § 45a-675 corresponds with the holdings of courts in other jurisdictions that have addressed the presence issue in analogous contexts. These courts have held that a guardianship statute providing a respondent with a *right* to be present means that a respondent *must* be present, in the absence of a valid waiver or statutory exception. See *In re Link,* supra, 713 S.W.2d 494 (statutory right to be present at guardianship proceeding "reflects a legislative intent to provide greater protection for the rights of incompetents than previously

---

[14] The duty of the court to determine a respondent's preference under General Statutes § 45a-676 (f) is addressed more fully in part III.

existed under Missouri law"); *Guardianship of B.A.G.*, 794 S.W.2d 510, 513 (Tex. App. 1990) (holding that, in temporary guardianship proceeding for woman with mental retardation, "the allegedly incapacitated person must appear because that person's rights are being limited, even if for a short period of time").

We therefore hold that § 45a-675 requires a respondent to be present at a guardianship proceeding before the Probate Court, and at any appeal of that proceeding to the Superior Court, in the absence of a finding by the court that the respondent's presence would be seriously detrimental to his or her emotional or mental condition. This holding, however, does not end our inquiry. We next must determine whether the right of a respondent to be present at a hearing under § 45a-675 can be waived, and if so, the necessary requirements of such a waiver.

II

We have never addressed the question of waiver of presence in the context of civil guardianship proceedings. Connecticut law on waiver of that right in other proceedings, and the guardianship decisions of courts in other jurisdictions, however, help to define the broad contours of the doctrine.

We have held that although a defendant in a criminal trial has a right to be present at all critical stages of his trial; *State* v. *Simino,* 200 Conn. 113, 125, 509 A.2d 1039 (1986); this right is not absolute. Id., 128. A defendant, in fact, may waive this right. Id., 129. To constitute an effective waiver, a defendant's decision must be intelligent and competent. Id. Similarly, a probationer may waive his right to be present at a final revocation proceeding by making a knowing and voluntary decision. *State* v. *Durkin,* 219 Conn. 629, 636, 595 A.2d 826 (1991); see also *State* v. *Patterson,* 230 Conn. 385, 392, 645 A.2d 535 (1994).

Moreover, we have held that a defendant in a civil proceeding may waive his right to be present, but usually only by an affirmative act. " 'The law condemns no man unheard. It takes from him no property and deprives him of no right without giving him a day in court. He may waive his opportunity to appear and defend, or forfeit his right to a hearing by negligence, but not ordinarily by inadvertence or misfortune.' " *In re Baby Girl B.*, 224 Conn. 263, 285, 618 A.2d 1 (1992), quoting *Schoonmaker* v. *Albertson & Douglass Machine Co.*, 51 Conn. 387, 392 (1884).

Courts in several other jurisdictions have held that the right to be present at a proceeding where one's rights may be limited can be waived. See *In re Link,* supra, 713 S.W.2d 494–95; *In re Jessee,* 744 S.W.2d 514, 516–17 (Mo. App. 1988); *Guardianship of B.A.G.,* supra, 794 S.W.2d 512–13. In *In re Link,* supra, 494–95, for example, the Missouri Supreme Court noted that construing that state's statute so as to prohibit the respondent from waiving any of her rights "would deprive an alleged incompetent of her essential right and authority to make decisions regarding trial strategy, and would thereby deny the individual a vital tool for advancing his or her best interest. Though we conclude that the legislature intended to bolster the affected individual's *rights,* we believe that it is equally true that the legislature did not intend that this must be done at the expense of the individual's best *interest.*" (Emphasis in original.) We choose to follow the course charted by a majority of these jurisdictions and conclude that a respondent may waive his or her right to be present at the hearing before the Probate Court, at a subsequent appeal before the Superior Court, or both.

We now turn to the more complex question of what constitutes a valid waiver of the right to be present at a guardianship proceeding. The Missouri Court of Appeals has aptly described the dilemma facing courts

confronted with this question: "[The] argument that [the respondent] waived his rights by failing to appear begs the very question at issue—whether he was capable of knowingly and intelligently waiving any right. In a guardianship proceeding the argument has a peculiarly hollow ring. On the one hand, it charges that the respondent is incompetent and on the other hand it demands that we assume his competence to make a knowing, intelligent and voluntary waiver." *In re Jessee*, supra, 744 S.W.2d 515–16.

Despite their agreement that a respondent may waive the right to be present, courts in other jurisdictions have formulated somewhat different standards by which an effective waiver may be accomplished. In *Guardianship of B.A.G.*, supra, 794 S.W.2d 510, for example, the Texas Court of Appeals considered the waivability of the presence requirement in a statute providing for appointment of a guardian of the person.[15] The court held that the respondent in such an action needed to make a knowing and intelligent waiver, and that the respondent could not do so unless he or she first consulted with an attorney. Id., 513. Because the respondent in the case had not consulted with the attorney who had purported to waive her rights in court, there had not been an effective waiver. Id. Similarly, in *Doremus* v. *Farrell*, 407 F. Sup. 509, 515 (D. Neb. 1975), the court held that a person "has a constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion."

---

[15] The Texas statute; Tex. Prob. Code Ann. § 130G (a) (Vernon Sup. 1990); provided in part that "[t]he person alleged to be incapacitated shall be present at the hearing, unless the court determines that such personal appearance would not be in the person's best interest." *Guardianship of B.A.G.*, supra, 794 S.W.2d 512–13.

In *In re Link,* supra, 713 S.W.2d 495, the Missouri Supreme Court held that any waiver under the statute giving the respondent a right to be present at a guardianship hearing[16] must be accomplished affirmatively. "[W]e believe that the waiver must be made on the record and must also indicate whether the right to be present has been waived because the person is mentally or physically incapable of attending, or whether the right has been waived for some other reason directly related to the individual's best interest. In the former case there must also be supporting medical evidence placed on the record." Id. Two years after *In re Link,* the Missouri Appellate Court interpreted that decision to mean that "when a waiver occurs in an incompetency hearing, the trial court is charged with the duty of ascertaining that it is knowingly and intelligently made." *In re Jessee,* supra, 744 S.W.2d 516. The court held that because the attorney in the case had not consulted with the respondent prior to the hearing, the attorney's attempt to waive the respondent's right to be present had not been effective. Id., 516–17. Other cases involving civil commitments have similarly placed a duty on the court to make certain that the person waiving his or her right to be present is acting in his or her own best interests. See, e.g., *Suzuki* v. *Quisenberry,* 411 F. Sup. 1113, 1129 (D. Haw. 1976) (waiver "valid only upon acceptance by the court following a judicial determination that the person understands his rights and is competent to waive them"). A treatise on the law concerning individuals with mental disabilities agrees with this view. See S. Brakel, J. Parry & B. Weiner, The Mentally Disabled and the Law (3d Ed. 1985) p. 381 ("Where waivers are allowed, the court should confront the proposed incompetent

---

[16] The Missouri statute; Mo. Rev. Stat. § 475.075.8; provided in part that "[t]he respondent shall have the following rights in addition to those elsewhere specified .`. . (8) The right to be present at the hearing." *In re Link,* supra, 713 S.W.2d 492.

person directly to make sure the waiver is knowingly and intelligently made. If a court appearance would seriously disturb the person, then an interview could be arranged in the judge's chambers or some less threatening environment.'').

We conclude that, in order to accomplish an effective waiver, a respondent, his or her attorney, and the court must satisfy certain minimum requirements. Although we discuss these minimum requirements, we emphasize that each case must be handled and determined according to its own particular facts. The Probate Court or Superior Court judge, as the case may be, must be satisfied that a respondent has waived his or her presence and that the waiver, to the extent possible in any given case, was voluntarily, knowingly and intelligently made.

To ensure that a respondent is acting voluntarily, knowingly and intelligently, the respondent's attorney must meet with the respondent prior to the hearing to discuss his or her rights. After all, ''[f]airness demands that clients be informed, lest they lose the right [to be present] without ever knowing they had it . . . .'' S. Herr, S. Arons & R. Wallace, Legal Rights and Mental-Health Care (1983) p. 132. If the respondent indicates to the attorney that he or she wishes to waive the right to be present, or if the attorney believes that the respondent does not have the competence needed to decide whether to waive his or her right to attend or that attending the hearing ''would be seriously detrimental to [the respondent's] emotional or mental condition''; General Statutes § 45a-675; then the attorney must notify the court prior to the scheduled hearing on the guardianship application so that a preliminary hearing on the issue of the respondent's presence may be scheduled. At the preliminary hearing, the respondent, if competent to make a voluntary, knowing and intelligent waiver, may waive his or her right to be

present at the hearing on the guardianship application. If, for any reason, the respondent cannot attend the preliminary hearing, or if the respondent does not have sufficient competence to waive his or her right, the attorney for the respondent must present affidavits from, or the testimony of, mental health professionals or other experts who are familiar with the respondent and can render opinions about whether the respondent is competent to make a voluntary, knowing and intelligent waiver, or whether attending the guardianship proceedings would be seriously detrimental to the respondent. At the end of the preliminary hearing, if the court concludes that the respondent's presence is not necessary at the hearing for the guardianship, it must make a finding on the record either that: (1) the respondent has voluntarily, knowingly and intelligently waived his or her right to be present at the guardianship proceedings; (2) the respondent is incompetent to make the decision of whether to be present and it is in the respondent's best interests to be absent from the proceedings; or (3) the respondent's presence at the proceedings would be seriously detrimental to his or her emotional or mental health. The court must set forth on the record the specific facts relied on in making its finding.[17]

The record in this case reveals that both the attorneys for the respondent and the court failed to take adequate precautions to ensure that the respondent had

---

[17] As previously noted, the legislature in General Statutes § 45a-671 (a) has authorized the court to hold the hearing on a guardianship application at any place within the state in order to facilitate a respondent's presence. Although this statute is directed at the Probate Court, it applies to the Superior Court as well when that court is sitting as the Probate Court. See *Gardner* v. *Balboni,* 218 Conn. 220, 225, 588 A.2d 634 (1991). Therefore, a Superior Court judge hearing an appeal from probate may, in his or her broad discretion, hold the hearing at any place within the state, not only to facilitate the respondent's presence, but also to determine whether the respondent has validly waived his or her right to be present.

properly waived her right to attend the hearing under § 45a-675. It is not clear that her attorneys even consulted with the respondent prior to the Superior Court appeal in order to apprise her of her rights. They apparently did not mention the respondent's absence to the Superior Court prior to the onset of the hearing, and when the court finally asked about her absence, her attorneys did not offer an adequate explanation of why she was not there. The record does not contain any findings concerning whether the respondent wished to waive her presence at the hearing and, if so, whether she was competent to make such a decision. Clearly, there was no proper waiver of the respondent's rights under § 45a-675.

### III

The third and final issue that we must consider involves the decision of the Superior Court to appoint the respondent's mother as her guardian without first hearing any evidence concerning the respondent's preference. To decide this issue, we therefore must determine whether § 45a-676 (f) imposes on courts a special duty to determine the preference of a respondent before appointing a guardian based on the respondent's "best interests."

The Superior Court heard no evidence about the respondent's apparent preference, even though she had personally informed the Probate Court that she did not want her mother to be named her limited guardian. The respondent neither attended the Superior Court hearing nor testified about her preference. Instead, her attorneys sought to introduce evidence from the probate hearing about her preference that her guardian be someone other than her mother. The Superior Court sustained the defendant's objection to this evidence on the ground that it was hearsay.

In its oral decision, the Superior Court noted that it had "followed" the best interests of the respondent, but that it had heard no evidence of her preference. The court explained that even if it had heard testimony about the respondent's preference, such testimony probably would not have affected the court's decision.

## A

Section 45a-676 (f) provides in relevant part: "In selecting a plenary guardian or limited guardian of the mentally retarded person, the court shall be guided by the best interests of the respondent, *including, but not limited to, the preference of the respondent as to who should be appointed as plenary guardian or limited guardian.*" (Emphasis added.) In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended. *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). When the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). Indeed, "[a] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, there is no room for construction." (Internal quotation marks omitted.) *State* v. *Genotti,* 220 Conn. 796, 807, 601 A.2d 1013 (1992).

The plain meaning of § 45a-676 (f) requires the court to be guided by the respondent's best interests, which *include,* but are *not limited to,* the respondent's preference as to who should be appointed guardian. We have held that such language sets out certain categories that *shall* be considered by the court, but indicates a legislative intent not to limit the field of relevant considerations. *Leib* v. *Board of Examiners for Nursing,* 177

Conn. 78, 89–90, 411 A.2d 42 (1979). In such a case, a court must consider the specific types of information indicated, but also may consider "other or additional" factors that are relevant to the decision. Id., 90. Under § 45a-676 (f), therefore, a court selecting a guardian for a respondent *must* consider the respondent's preference if he or she has one, but it *may also* give weight to other factors that bear on the respondent's "best interests."

We find additional support for this interpretation in the differences in the language used in § 45a-676 (f) and the language used in General Statutes § 45a-650, the conservatorship statute. Section 45a-650 (d) provides that in a proceeding for the appointment of a conservator, a respondent *"may,* by oral or written request, *if at the time of the request he or she has sufficient capacity to form an intelligent preference,* nominate a conservator . . . ." (Emphasis added.) The statute in question in this case, § 45a-676 (f), makes no such qualification on the right of a respondent to voice a preference or on the duty of the court to consider that preference. Instead, § 45a-676 (f) states in plain language that the court shall be guided by the respondent's best interests, and in making that determination, shall take into consideration the respondent's preference. The difference in wording suggests that although the preference of a respondent in a conservatorship proceeding may be disregarded if he or she lacks sufficient mental capacity, the preference of a respondent in a proceeding under the act must be heard and accorded due weight by the court, regardless of the respondent's mental state.

Requiring courts to consider a respondent's preference is consistent with the views of scholars who have written about the legal rights of individuals with mental retardation. These writers suggest that whenever possible, courts should attempt to include such individ-

uals in decisions that will affect their lives. "For people with mental handicaps, whose liberty interests have long been devalued, the right to make choices must be nurtured and defended." S. Herr, Rights and Advocacy for Retarded People (1983) p. 248. Moreover, "respect for the choices made by competent individuals with mental retardation is essential for the protection of their autonomy." J. Ellis, "Decisions By and For People With Mental Retardation: Balancing Considerations of Autonomy and Protection," 37 Vill. L. Rev. 1779, 1808 (1992).

Our construction of § 45a-676 (f) is in accord with the great weight of authority interpreting guardianship statutes containing similar language. For example, in *In re Guardianship of Kowalski,* 478 N.W.2d 790, 792 (Minn. App. 1991), the Minnesota Appellate Court interpreted a statute that instructed the court to "make a finding that appointment of the person chosen as guardian or conservator is in the best interests of the ward"; Minn. Stat. Ann. § 525.551 (5); where "best interests" was defined as "all relevant factors . . . including but not limited to: (1) the reasonable preference of the ward or conservatee, if the court determines the ward or conservatee has sufficient capacity to express a preference . . . ." Minn. Stat. Ann. § 525.532 (7). The court held that, "when taken as a whole, the statute's enumerated factors direct that a guardian be someone who is preferred by the ward if possible . . . ." Id., 793.

Similarly, the Missouri Court of Appeals construed a conservator statute that required the court to "consider the suitability of appointing any of the following persons who appear to be willing to serve: (1) [i]f the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person . . . nominated by him . . . ." Mo. Rev. Stat. § 475.050 (1) (Cum. Sup. 1984);

*In re Weissinger,* 720 S.W.2d 430, 433 (Mo. App. 1986). In apparent disregard of that language, the court had appointed a niece to be conservator for her eighty-one year old uncle, despite the uncle's expressed preference that his neighbor and best friend be appointed instead. Id., 431–33. The court held that the statute "leaves the selection of a guardian or conservator to the ward whenever possible. . . . While we do not hold that the court is absolutely bound by the choice of the disabled person, if a reasonable choice is made and communicated to the court, the court shall first consider the suitability of appointing the protectee's nominee before proceeding to the consideration of other persons." Id., 434–35; see also *In re Estate of Johnson,* 219 Ill. App. 3d 962, 965, 579 N.E.2d 1206 (1991) ("[s]election of a limited guardian is within the trial court's discretion, which must give due consideration to the preference of the disabled person").

## B

We recognize that in some circumstances it may be difficult for a court to fulfill its statutory obligation to ascertain the preference of the respondent. This may be the case, for example, if a respondent cannot understand that he or she may express a preference or cannot effectively communicate that preference. In addition, a court may find it difficult to ascertain the respondent's preference if the respondent has properly waived his or her right to attend the guardianship hearing.

We hold that in such a case, the statute requires only that the court take all reasonable measures available to it to determine the respondent's preference. When the court appoints a guardian under the act without the benefit of knowing the respondent's preference, it must indicate, on the record, how it has attempted to determine the respondent's preference. What measures qualify as "reasonable" will, no doubt, vary from case

to case, and we therefore will not attempt to offer an exhaustive list of procedures that a court should or must undertake in order to ascertain the respondent's preference. Two possible approaches, however—one taken from the act itself, and one from Connecticut case law—bear emphasis.

First, as noted previously, § 45a-671 (a) allows the court to hold a guardianship hearing "at a place within the state other than its usual courtroom if it would facilitate the presence of the respondent." See footnote 17. Although this provision nominally is directed at the court's duty to encourage the *presence* of the respondent, we see no reason why it should not apply with equal force to the court's duty under § 45a-676 (f) to ascertain the *preference* of the respondent.

Second, Connecticut courts have long been receptive toward holding informal meetings with sensitive witnesses, provided the constitutional requirements of due process are satisfied. See *Gennarini* v. *Gennarini*, 2 Conn. App. 132, 139–40, 477 A.2d 674 (1984). For example, in *In re Noel M.*, 23 Conn. App. 410, 421–22, 580 A.2d 996 (1990), a child abuse case, the Appellate Court upheld the trial court's decision to interview the child victim in chambers, rather than in open court. The Appellate Court held that because all interested parties had been present and the judge had posed questions formulated by the attorneys involved, due process had been satisfied. Id. A court may find that such a procedure also is effective in trying to determine the preference of the respondent in a guardianship action.

C

In this case, the Superior Court failed to ascertain or even take measures to ascertain the respondent's preference for a limited guardian. In its oral decision, the court merely noted that it had "heard no evidence of the preference of the respondent" and that even if

it *had* ascertained the respondent's preference, its decision probably would not have been different. These findings fail to satisfy the requirements of § 45a-676 (f).

## IV

We hold that the procedures utilized by the Superior Court in this case were deficient in two respects. First, the court allowed the attorneys to waive the respondent's presence at the hearing, without making any finding on the record concerning whether she had made a knowing, voluntary and intelligent decision to waive that right. Second, the court failed to determine, or to take reasonable steps to determine, the respondent's preference before appointing the defendant as her limited guardian.

The judgment is reversed and the case is remanded to the Superior Court for a new hearing consistent with this opinion.

In this opinion the other justices concurred.