**John DOE, held as Harold Adams, Plaintiff,**

v.

**Robert MORGENTHAU, et al., Defendants.**

**No. 88 Civ. 9192 (VLB).**

United States District Court, S.D. New York.

Feb. 15, 1994.

Order on Reconsideration Nov. 8, 1994.

John Doe held as Harold Adams, pro se.

David Mudd, Marc Scholl, Asst. Dist. Attys., New York City, for defendants.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This case involves claims under 42 U.S.C. § 1983 against prosecutors and other public officials. Chief United States Magistrate Judge Naomi Reice Buchwald, by Report and Recommendation dated May 5, 1992, recommended that motions for summary judgment under Fed.R.Civ.P. 56 filed by two defendants, John Moscow and Beth Jacob, be granted and the claims against them dis-

missed. By memorandum order of February 5, 1993, I approved and adopted the Report and Recommendation and granted the motions. Plaintiff was given leave to and has moved for reconsideration. Reconsideration is granted and the former decision adhered to.

Plaintiff has also objected to a denial by the Magistrate Judge on August 3, 1993 of plaintiff's request for a further extension of discovery cutoff date. The objection is overruled.

## II

■ The background of this case is described in the Report and Recommendation of May 5, 1993, which I approved and adopted. Despite the multiplication of claims, arguments and legal theories, the underpinning of plaintiff's numerous claims is that he had medical problems while in prison which state officials minimized in arguing to various judicial tribunals. Plaintiff claims that in some instances he was unable to get to court for scheduled hearings; he asserts that such instances were deliberate despite absence of evidence to support that supposition.

A variant of the latter claim is that because he was moved out of the state he was denied access to the state courts. There is no authority suggesting that New York courts will not hear claims of New York prisoners merely because physically held outside the state, or that this happened to plaintiff. Plaintiff also relies on refusal to dismiss some of his claims at the pleading stage as a ground for insisting that summary judgment under Fed.R.Civ.P. 56 should also be denied.

It is clear that plaintiff could and did attend some of the hearings, could and did file papers, and was able to submit his views to the courts in both ways. There is no support for any contention that he was denied access to the courts. Rather he encountered delays of the types commonly experienced in litigation generally.

As found by the Magistrate Judge in her May 5, 1993 Report and Recommendation at 7, n. 8, the state officials arguing to various courts never had or claimed to have direct knowledge of plaintiff's medical condition. Counsel for an adversary are not required to agree with the opposing party's contentions upon pain of being held liable under 42 U.S.C. § 1983. And if testimony (including statements made under penalty of perjury such as affidavits) is given, it is protected by absolute immunity to avoid what would otherwise be a chilling effect upon judicial efforts to obtain underlying facts. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

Plaintiff's claims of denial of access to the courts are contrary to his ability to communicate in writing, never controverted, in-person hearings held, and through documentary submissions. Transcripts attached to plaintiff's application for reconsideration at 15 and following illustrate that plaintiff (there called "Jones") could and did contradict the state officials' arguments in open court. Similarly, he had and has access to his medical records, as exemplified by page 22 and following of that application. If he could not get to court, he was free to and able to request further hearings on that ground, which he never claims were denied him.

In short, whenever plaintiff's contentions are unsuccessful, he appears to argue that this must have occurred because of actionable conduct on the part of the adversary. Each procedural initiative based on such a perception which fails can be cited as another instance of the same misconduct on the part of the adversary, thus generating an exponentially increasing number of claims and arguments.

## III

Rulings of a United States Magistrate Judge in the course of supervising discovery can be overturned only if "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). Moreover, a Magistrate Judge with close involvement in day-to-day aspects of a case is in the best position to evaluate what discovery will be useful in arriving at a "just, speedy and inexpensive" determination of the action, to be sought under Fed.R.Civ.P. 1 and its 1993 amendment (which adds the term "administered" to the duty of the courts

that the Rules be "construed" to seek that goal).

While plaintiff objects to virtually all rulings denying any of his discovery requests, only two points appear to require discussion.

■ Complaint is made that the state officials had consented to some items not ordered by the Magistrate Judge to be produced. The court is not required to employ its authority to require a party to do everything that party may be willing to do. The defendants are free to produce any documents they were willing to produce, and may well do so as a matter of promoting reliance upon their representations. Not all stipulations of the parties are, however, "so ordered," and the Magistrate Judge is not required to order such compliance if not considered necessary to the proper conduct of the litigation.

The bulk of plaintiff's objections are based on the assumption that everything relevant to his complaint should be produced even if such information would not overcome the deficiencies noted above or show that a genuine issue of material fact exists with respect to those claims that are still pending. In particular, exploring plaintiff's removal from New York would serve no purpose unless it can be shown that this prevented him from presenting claims to New York courts.

■ If there were threshold indications that it was necessary to bring plaintiff to New York during his stay elsewhere because a personal appearance was the only way to present a matter required to be determined in state court, and if a writ for that purpose were requested and thereafter denied without good reason, discovery to assist the court in determining whether or not this occurred might be called for. The mere existence of a claim in a complaint does not automatically require discovery concerning all aspects of that claim if the court has determined that a crucial issue which may be dispositive is

pending, and if discovery adequate to permit just resolution of that issue is permitted. Such structured discovery is, indeed, specifically encouraged by the Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat 5091, enacting 28 U.S.C. § 473.[1]

SO ORDERED.

## MEMORANDUM ORDER ON RECONSIDERATION

### I

This case was brought by a prisoner alleging that thirty-two city and state officers, in their individual and official capacities, violated a variety of plaintiff's civil, statutory and constitutional rights in connection with his arrest on December 11, 1985 and subsequent detention. The complaint sought compensatory and punitive damages, injunctive and declaratory relief.

By orders which adopted the Reports and Recommendations of United States Magistrate Judge Naomi Reice Buchwald dated June 27, 1990, January 9, 1991, May 5, 1992 and March 24, 1994, I dismissed all claims except those related to plaintiff's allegation that he was denied prompt medical treatment immediately after his arrest.[1]

Plaintiff has moved for reconsideration of the dismissed claims. I adhere to the orders of dismissal: only the claim of denial of access to the courts of New York concerning plaintiff's extradition to Massachusetts merits further discussion. See *Doe v. Morgenthau*, 871 F.Supp. 605 (S.D.N.Y.1994).

As to the delayed medical treatment claim, I direct the parties to make further submissions as outlined below.[2]

### II

Plaintiff was indicted on October 17, 1984 for grand larceny in the second degree and criminal possession of a forged instrument in

---

1. This approach is further encouraged by the aspects of 1993 amendments to Fed.R.Civ.P. 26 which are in effect in this district.

1. Familiarity is assumed with the Magistrate Judge's Reports and Recommendations, and with my order which adopted them.

2. Defendants are also to notify any identifiable victims of crimes committed by plaintiff (who may have monetary claims against plaintiff) of the status of this case.

the second degree. On July 11, 1985 this indictment was succeeded by an indictment charging plaintiff and five other individuals with conspiracy in the fifth degree, grand larceny in the second degree, criminal possession of a forged instrument in the second degree, and scheme to defraud in the first degree.

Following the indictment of October 17, 1984, plaintiff, who had been released on bail, caused an imposter take his place at all scheduled court appearances. Upon discovering this fraud, the state moved to rearrest the plaintiff. On December 11, 1985, when detectives arrived at plaintiff's apartment, plaintiff kicked an air conditioning unit out of a window and, in an attempt to escape, suffered a fracture of the fourth metatarsal bone in his right foot. There is no evidence that the officers inflicted plaintiff's injury. Following his arrest, plaintiff refused to identify himself to police by any name other than John Doe, a position continued as reflected in the caption of this lawsuit. Fingerprint records revealed his identity as Harold Jones, also known as Harold Adams.

Medical treatment for the plaintiff was not provided until plaintiff's arraignment on December 12. Plaintiff was given medical treatment on December 12 at Rikers Island Health Services, and on December 13 at Bellevue Hospital, and was given further treatment on December 25, 1985; February 9, 1986; February 11, 1986; February 17, 1986; February 19, 1986; and February 21, 1986. From February 27, 1986 through March 6, 1987, plaintiff was seen at the Rikers Island Medical Clinic more than two hundred times, almost exclusively for the treatment of his foot.

While the New York charges were pending against the plaintiff, the Manhattan District Attorney received information that plaintiff was a convicted murderer in Massachusetts wanted for escape. In February 1986 Massachusetts officials sought plaintiff's extradition. In May 1987 plaintiff was extradited to Massachusetts to serve the remainder of his life sentence. As a result of the extradition, New York charges against him were dismissed.

## III

Plaintiff alleges he was denied a constitutional right to challenge the extradition in the courts of New York because he was sent to the receiving state and lost the opportunity to pursue the issues further in New York.

■ Access to the courts is a vital safeguard against oppression, public or private. As such, it is protected by the Due Process Clauses of the Constitution of the United States. *Bates v. Arizona*, 433 U.S. 350, 376 n. 32, 97 S.Ct. 2691, 2705 n. 32, 53 L.Ed.2d 810 (1977); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *United States v. Local 6A*, 832 F.Supp. 674 (S.D.N.Y.1993); see *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938); Dowling, "The Methods of Mr. Justice Stone in Constitutional Cases," 41 Colum L.Rev. 1160 (1941); see also *Honda Motor Co. v. Oberg*, —— U.S. ——, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (denial of judicial review of amount of punitive damage awards violates the Fourteenth Amendment Due Process Clause).

■ While access to the courts, like other constitutionally guaranteed rights, cannot be defeated by resort to inadequate or insupportable procedural barriers, *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); see *Thomas v. Yonkers Police Dept.*, 147 F.R.D. 77, 79–80 (S.D.N.Y.1993), procedural limitations are necessary to the functioning of any system of justice. They may serve to avoid repetitive arguments concerning the same claim in every available forum. A person may seek to stay extradition in various ways: by establishing some deficiency in the grounds for extradition; or by showing abuse of the procedure or the existence of special circumstances. Absent such a showing, stays are denied. See *Matter of Extradition of Hamilton–Byrne*, 831 F.Supp. 287 (S.D.N.Y. 1993).

■ Unless a stay is obtained, contentions available to an extraditee must be raised in the jurisdiction to which the person is sent. Inability to argue extradition issues in the

extraditing jurisdiction does not deny access to the courts; access may then be had to the courts of the requesting state.

■ Here, plaintiff had a right to access to the courts of New York to request whatever relief those courts under their procedures provided. This does not mean that New York was required to afford an opportunity to litigate the merits of an extradition request absent an application for and grant of a stay, provided that the plaintiff was able to contest the propriety of his imprisonment in the requesting jurisdiction.

■ Moreover, where, as here, an extraditee has not shown that his extradition was improper, any denial of a particular forum would be harmless and hence no grounds for subsequent relief. *United States v. Olano,* ── U.S. ──, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Brecht v. Abrahamson,* ── U.S. ──, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); see Fed.R.Civ.P. 61; 28 U.S.C. § 2111.

Petitioner has provided no evidence that he applied for a stay of his extradition or that he was prevented from making such an application. His claim that he was denied his right to challenge extradition in the courts of New York is accordingly without merit.

## IV

The only claim which has survived summary judgment is plaintiff's allegation that prior to arrest he had suffered a fracture of the fourth metatarsal bone in his right foot, but that he did not receive medical attention until 28 hours after arrest. (Report and Recommendation of March 24, 1994, p. 18). The proper disposition of that claim remains open for further examination.

I direct plaintiff to provide sufficient evidence to establish that there is a genuine material issue with respect to the existence of facts suggesting that claim. I direct defendants to furnish any information relevant to that issue, including the material which Magistrate Judge Buchwald has indicated was lacking in the defendants' motion for summary judgment. (Report and Recommendation of March 24, 1994, p. 18). See *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Jacobson v. Cohen,* 151 F.R.D. 526 (S.D.N.Y. 1993).

■ In providing this information, the parties should take into consideration that prisoners have a constitutional right to appropriate medical attention, and that deliberate or reckless disregard of such a right constitutes a violation of 42 U.S.C. § 1983. See generally *Farmer v. Brennan,* ── U.S. ──, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

As pointed out by the Magistrate Judge, numerous problems existed at the time plaintiff was arrested affecting the facilities at which plaintiff was held. Depending on the circumstances, the existence of these problems may or may not support inferences that any of the defendants did or did not disregard constitutional rights of the plaintiff.

Defendants' actions may or may not have been reasonable under the circumstances. There is no automatic violation of the plaintiff's constitutional rights merely because plaintiff was not given medical attention immediately after the injury. For example, defendants may have lacked information necessary to act; they may have done the best they could under difficult circumstances; they may have confronted an emergency situation making it impossible to do everything that could and should have been done in other circumstances. They may have believed (correctly or otherwise) that the particular injury involved required attention but not on an emergency basis. *New York v. Quarles,* 467 U.S. 649, 657–58, 104 S.Ct. 2626, 2632–33, 81 L.Ed.2d 550 (1984); *Howard v. Garvin,* 844 F.Supp. 173 (S.D.N.Y.1994).

Depending on the circumstances surrounding the defendants' actions, there may or may not be a genuine issue of material fact as tested under Fed.R.Civ.P. 56.[3] The presence, absence, or extent of harm caused to

---

**3.** *Matsushita v. Zenith,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), held that where a claim is "implausible" the claimants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id.* at 587, 106 S.Ct. at 1356.

plaintiff by the delay at issue may or may not be relevant to these questions.

## V

 Victims of crimes constituting intentional torts are entitled to sue for damages. Restatement Second of Torts § 870 (1989). Plaintiff's recovery, if any, in this federal civil rights suit might be subject to claims by the victims of plaintiff's crimes.

Based on the plaintiff's lack of obvious assets, it is unlikely that in normal course the victims of the plaintiff's crimes would have incurred the cost of bringing an action against him only to have the judgment go unsatisfied. Such victims could, or course, obtain a judgment against him and continuously renew it until the plaintiff has money to satisfy it. It is unlikely, however, that the victims would take such action unless they knew of plaintiff's potential to improve his financial condition.

It would be incongruous to permit a person who perpetrated a crime to obtain money as a result of events connected with that person's arrest, without having to pay for any harm caused to those injured by reason of the crime or other tortious acts committed by the perpetrator. Such a one-sided result would run counter to the "sober second thought of the community, which is the firm base on which all law must ultimately rest," Stone, "The Common Law in the United States", 50 Harv.L.Rev. 4, 25 (Nov. 1936). In such a situation "the law itself is on trial, quite as much as the case to be decided," *Id.* at 10.

 Defendants here, acting as representatives of the People, as they do in New York as indicated by the caption of state criminal cases, are directed to notify any locatable victims of crimes allegedly · committed by plaintiff (in any jurisdiction) of this lawsuit, so as to allow them to bring a civil action to recover any losses incurred as a result of plaintiff's criminal conduct.

Should such victims be unidentifiable or impossible to locate, the defendants here may wish to consider asserting a claim on behalf of these victims.[4] Claims by those defendants who represent the People, including crime victims, on behalf of such victims may properly be regarded as in the nature of counterclaims. Any claim by defendants on behalf of plaintiff's victims would be an offset to plaintiff's claims against the People and could be asserted as of right.[5] See *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *United States v. Medlin*, 767 F.2d 1104, 1107 (5th Cir.1985); *United States v. Longo*, 464 F.2d 913 (8th Cir.1972); *FLSIC v. Quinn*, 419 F.2d 1014 (7th Cir. 1969); Fed.R.Civ.P. 13.

**SO ORDERED.**

---

4. There are many doctrines under which one may assert the rights of others. Among these are class actions under Fed.R.Civ.P. 23 and *parens patriae* suits under 15 U.S.C. § 15c which authorizes the attorney general of a state to bring a federal antitrust action on behalf of natural persons residing in that state. See *California v. American Stores*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990) (antitrust); *Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599 (1982) (welfare of a child); *In the Matter of Anne*, 609 N.Y.S.2d 111, 113, 202 · A.D.2d 806 (3rd Dept.1994) (welfare of a child); *Oller v. Oller–Chiang*, 230 Conn. 828, 836–7, 646 A.2d 822, 827–828 (1994) (protection of incompetents).

5. Apart from claims on behalf of plaintiff's victims, to allow a governmental entity to recover non-routine costs incurred because of extraordinary acts of plaintiff seems a natural outgrowth of the principles governing liability for intentional torts. Restatement Second of Torts § 7, 870, (1989).

Thus, the plaintiff's recovery might be subject to counterclaims under Fed.R.Civ.P. 13 as a set-off or offset of non-routine costs incurred by governmental authorities because of deliberate wrongdoing of the plaintiff involved. Just as victims of plaintiff's crime are entitled to recover damages, so too would governmental bodies be able to recover for the monetary damages to society caused by plaintiff's comportment.