[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE OF DEFENDANT NEW BALANCE ATHLETIC SHOE
The defendant, New Balance Athletic Shoe, Inc., has moved the court to strike the eighth count and the third prayer for relief of the plaintiff's complaint dated September 28, 1998, because it sets out a claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a, et seq., but the exclusivity provision of the Connecticut Products Liability Acts (CPLA) General Statutes § 52-572(n)(a), bars assertion of the CUTPA claim in such a products case.[1]
In opposition, the plaintiff has urged that the court adopt a "functional test" and bar a CUTPA claim under the exclusivity provisions of the CPLA only if the CUTPA claim were "co-extensive with the product liability claim" asserted by the same plaintiff. See, e.g., Utica Mutual Insurance Co. v. Denwat Corp. ,778 F. Sup. 592 (D. Conn. 1991). If some additional theory of recovery or remedy sought which was not provided for in the product liability claim, then plaintiff urges it would not be functionally equivalent to the product liability law and thus not barred. Because it appears to the court that the plaintiff's CT Page 13711 complaint alleges a product liability claim which, by statute, is in lieu of all other claims against product sellers, the court finds the plaintiff's CUTPA claim against the defendant, New Balance Athletic Shoe, is barred by the exclusivity provisions of General Statutes § 52-572(n)(a) and the defendant's Motion to Strike is therefore granted.
The court must concede that the name of the functional equivalency test carries with it a certain cachet. Certainly if a test is necessary, better that it be functional rather than dysfunctional. However, one difficulty with the functional approach is that it begs the principal question, i.e., whether in a products case there is a statutory bar to other theories of recovery because of the plain statutory language indicating that the product liability claim be "in lieu of all other claims against product sellers." The court agrees with the authors of the principal treatise on the Connecticut Unfair Trade Practices Act who observed that some representation is present in the sale of any product. R. Langer, J. Morgan D. Belt, The Connecticut Unfair Trade Practices Act (1994) § 3.12, pp. 72-75. They have analyzed the issue about whether a CUTPA claim can be brought in a product liability case and the Utica Mutual
functional equivalency test. The treatise stated as to safety representations: "The difficulty with the distinction made inUtica Mutual is that such an implicit representation would seem to be present in all sales of products, thereby making all such claims not functionally equivalent. The [U.S. District] Court suggested there would be a functional difference if the bases of recovery differed or if injuries that would not be covered by the CPLA were included as injuries to be covered under CUTPA." Id., 72. Presumably parties would not be suing product sellers about representations they made about the product which a plaintiff believes were true. The treatise authors noted that because an implicit safety representation seems to be present in all product sales, all such claims would not be functionally equivalent and presumably not subject to the exclusivity provisions of the Products Liability Act. Id. The authors further observed that theUtica court "suggested there would be a functional difference if the bases of recovery differed or if injuries that would not be covered by the CPLA were included as injuries to be covered under CUTPA." Id. In commenting on this functional difference, the authors went on to say that the difficulty with the part of the test which would permit a CUTPA claim if the bases of recovery differed "is that the `necessary additional element' may be present in all cases, thereby making the issue simply one of CT Page 13712 leading" and leaving no efficacy to the statutory preemption.Id., 72-73. Unsaid is the difficulty of the second part of the test. The second part permits a CUTPA claim if the CUTPA claim pled legal injuries for which there was no remedy under the CPLA. The test renders the statutory preemption of the CPLA meaningless since by alleging some additional relief remedy not covered by the CPLA, the CPLA exclusive remedy could always be avoided. The odd rule of law which necessarily results from use of the test would be that the statutory products liability action is your exclusive claim and its remedies for proving that claim your exclusive remedies, unless, of course, you choose to assert different claims which the law prohibits, which afford the same and other remedies. If the legislative purpose of the CPLA was to limit the theories of recovery and the corresponding remedies available to those set out in the act for personal injury, death or property damage due to the manufacture, design, warning, instructions, marketing or package of any product, then the "functional equivalency" test makes mincemeat of that purpose. For these reasons the court does not find the functional equivalency test useful.
In its February 19, 1998 [Leach v. Minnesota Mining Manufacturing Co.,21 CONN. L. RPTR. No. 9, 314 (April 13, 1998)] and April 28, 1998 rulings about related cases, this court struck prior CUTPA claims because the CPLA is specific and clear that the plaintiff's marketing claims under CUTPA fall within the definition of a "product liability claim," thus constituting the plaintiff's exclusive remedy. General Statutes § 52-572n(a) provides: "A product liability claim . . . may be asserted and shall be in lieu of all otherclaims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." (Emphasis added.) Section 52-572m(b) defines a "product liability claim" as a claim or action "brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product."
The eighth count alleges unfair trade practices by the defendant New Balance Athletic Shoe concerning advertising, marketing and selling of a jogging jacket which did not adequately reflect oncoming motorists' headlights and save the plaintiff from injury. Any argument that the plaintiff's allegations in her CUTPA claims are in no way connected with "marketing" as used in the CPLA is unavailing. Indeed, "marketing" is "an aggregate of functions involved in moving CT Page 13713 goods from producer to consumer." Merriam-Webster's Collegiate Dictionary (9th Ed. 1987). If advertising, that process by which the manufactured product is brought to the public attention of a wholesaler or ultimate consumer through some print or broadcast media, is not marketing, then nothing is. Where a statute's terms are plain and unambiguous, courts of law are bound to so interpret it, giving its words their plain and ordinary meaning, and interpreting it as written. See Oller v. Oller-Chiang,230 Conn. 828, 848, 646 A.2d 822 (1994); Harris Data Communications,Inc. v. Heffernan, 183 Conn. 194, 198, 438 A.2d 1178 (1981).
The defendant, New Balance's, motion to strike the eighth count and the corresponding prayer for relief is granted.
Flynn, J.