## HALL MANOR OWNER'S ASSOCIATION *v.* CITY OF WEST HAVEN
### (13654)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued May 10—decision released July 18, 1989

*Kathleen S. Mass,* with whom, on the brief, were *Vincent R. Falcone* and *Mark Healey,* for the appellant (plaintiff).

*Mark J. DeGennaro,* deputy corporation counsel, for the appellee (defendant).

HULL, J. The sole issue on appeal is whether the plaintiff's residential complex known as Hall Manor is entitled to refuse collection by the defendant, the city of West Haven, pursuant to a West Haven ordinance that regulates such collection within the city. We agree with the trial court that, under the language of the ordinance, the complex is not eligible for the city provided service, and, accordingly, find no error.

The relevant facts are not in dispute. Prior to January 20, 1983, the Hall Manor complex was a residential apartment building containing seventy-six individual apartments. On January 20, 1983, a document entitled "Declaration of Covenants, Easements, Reservations and Tenancies in Common" was recorded on the land records of the city of West Haven purporting to create "Hall Manor, A Planned Unit Development Modular Complex." This declaration divided the complex into nineteen attached and detached "modules," each containing four apartment dwelling units. Fee simple ownership for each module was then conveyed separately to various purchasers. According to

the declaration, the plaintiff, a Connecticut corporation comprised of owners of the nineteen modules, was conveyed fee simple ownership of the land and common improvements, exclusive of the buildings.[1]

Since January 20, 1983, the plaintiff has removed the refuse generated at its complex based upon the defendant's claim that such removal is the plaintiff's responsibility. Refuse collection in the city of West Haven is regulated by a city ordinance which provides, inter alia, that "[t]he Department of Public Works is responsible for the collection, removal and disposal of garbage, refuse and other waste material from all private dwellings in the city." West Haven Code § 119-1 (D). While no definition of "private dwellings" was contained in the ordinance as adopted in February, 1983,[2] the city amended the ordinance on June 27, 1983, to include the following: " 'Private dwellings' as used herein shall include all residential condominiums as the term condominium is defined by the Condominium Act of the Connecticut General Statutes. It is expressly understood that condominiums shall not include commercial or other forms of non-residential condominium unit ownership. It shall not include apartments nor co-op housing ownership." West Haven Code § 119-1 (D) (1). The ordinance provides further that "[t]he collection of garbage, refuse and other waste material from industrial, business and apartment buildings of more than

---

[1] Hall Manor Owner's Association was established, according to the declaration, "to manage, maintain and operate the Complex and to act as agent and attorney-in-fact for its members in the pursuit of their common interests and mutual health, welfare and safety."

[2] The city of West Haven first enacted an ordinance regulating the collection of refuse in 1967. This ordinance was amended and re-enacted as "An Ordinance Regulating the Collection of Refuse in the City of West Haven" in February, 1983. Both ordinances were promulgated pursuant to the general power granted municipalities to "[p]rovide for or regulate the collection and disposal of garbage, trash, rubbish, waste material and ashes by contract or otherwise . . . . " General Statutes § 7-148 (c) (4) (H).

four (4) dwelling units shall be the responsibility of the property owner(s)." West Haven Code § 119-1 (E).

In February, 1988, the plaintiff instituted a declaratory judgment action against the city seeking a declaration that, pursuant to the ordinance, Hall Manor was entitled to municipal refuse collection, and seeking compensatory damages for expenses incurred for refuse removal during the five year period in which the defendant failed to provide the service to the plaintiff's residential complex. The case was referred to *Hon. Harold M. Mulvey,* state trial referee. A stipulation of facts, trial briefs and exhibits were submitted to the trial court to serve as the basis for its decision. The plaintiff claimed in its trial brief that Hall Manor was a "private dwelling" within the meaning of the ordinance and therefore eligible for the municipal service. The city responded that the complex, as a planned unit development, was not a "private dwelling" and thus not eligible for the service. The trial court agreed with the defendant and rendered judgment accordingly. This appeal by the plaintiff ensued.

On appeal the plaintiff claims that the trial court erred by ruling that, under the language of the ordinance, Hall Manor is not a "private dwelling" entitled to municipal refuse collection. The plaintiff argues in the alternative that: (1) Hall Manor is entitled to the municipal service because it is a condominium; (2) Hall Manor, although a planned unit development, is entitled to the service because it consists of individual private dwelling units; and (3) Hall Manor is implicitly entitled to the service because it is composed of nineteen distinct four unit apartment buildings. As to each of these claims, we disagree.

The plaintiff first contends that Hall Manor is entitled to municipal refuse collection because it is a condominium, and as such is specifically defined by the ordinance

as a "private dwelling" eligible for the municipal service. We conclude that Hall Manor is not a condominium.

The ordinance's inclusion of condominiums within the phrase "private dwelling" is limited by the provision that the term "condominium" be defined "by the Condominium Act of the Connecticut General Statutes [§ 47-68a et seq.]" West Haven Code § 119-1 (D) (1). General Statutes § 47-68a (a) defines a "condominium" as "real property and any incidents thereto and interests therein, lawfully submitted to this chapter by the recordation of condominium instruments pursuant to the provisions of this chapter." "Condominium instruments," in turn, are defined as "the declarations, bylaws, survey maps and plans recorded and filed pursuant to the provisions of this chapter." General Statutes § 47-68a (d).

While the plaintiff has recorded an instrument labeled as a declaration, this document does not fulfill the requirements of General Statutes § 47-68a et seq. General Statutes § 47-70 (a) clearly provides that "[t]he declaration *shall* contain the following information: (1) The name by which the condominium is to be identified, which name *shall* include the word 'condominium' or be followed by the words, 'a condominium;' (2) A description of the land on which the buildings and improvements are, or are to be, located together with the title and reference to a survey of such land prepared and certified substantially correct by a licensed surveyor or engineer and filed prior to or simultaneously with such declaration . . . . " (Emphasis added.) The declaration fails to meet either of these statutory requirements. First, while the declaration does contain the name of the complex, that name does not include the word "condominium" nor is the name followed by the words "a condominium." To the contrary, the plaintiff's complex is referred to throughout the declaration

as "Hall Manor, A Planned Unit Development Modular Complex." Secondly, the declaration contains a legal description of the land, but it does not refer to any survey of the land as required by the statute.

Furthermore, General Statutes § 47-88b sets forth the requirements for conversion condominiums. Since Hall Manor was used as an apartment complex prior to 1983, certain additional information relative to conversion condominiums is required to be included with the condominium instruments. There is no evidence of such compliance.

The plaintiff concedes that its condominium instruments are defective at least to the extent that the declaration does not use the word "condominium" in identifying the complex; the plaintiff argues, however, that the requirements of the Condominium Act are not to be construed strictly, but, rather, the court must look to the legislative intent and purpose in construing the statute.

In setting forth the previously discussed requirements for the creation of a condominium, the legislature consistently used the word "shall." While we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous; *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54, 523 A.2d 477 (1987); our past decisions have indicated that the use of the word "shall," though significant, does not invariably create a mandatory duty. *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985); *Tramontano* v. *Dilieto,* 192 Conn. 426, 433–34, 472 A.2d 768 (1984). The test we have adopted for determining whether such a statutory requirement is mandatory or directory is " ' "whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to

matter material or immaterial—to matters of convenience or of substance." ' " *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 503–504, 503 A.2d 1161 (1986), quoting *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334 (1890). If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory. *Fidelity Trust Co.* v. *BVD Associates,* supra.

A statutory provision that is directory " 'prescribes what shall be done but does not invalidate action upon a failure to comply.' *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969)." *Fidelity Trust Co.* v. *BVD Associates,* supra, 278. The Condominium Act is not such a directory statute. General Statutes § 47-71 (a) provides: "The owner or owners of any property in the state may submit such property to the provisions of this chapter *by filing or recording* on the land records of the municipality or municipalities in which the property is located *condominium instruments that comply with the provisions of this chapter.*" (Emphasis added.) General Statutes § 47-71 (b) provides that any declaration of condominium or other condominium instruments "shall not be of legal effect until filed or recorded on [such] land records . . . ." Therefore, under the Condominium Act, "regardless of any intention or preparatory conduct of a property owner to convert its property to condominiums, the property has no condominium status until *proper condominium instruments* . . . are recorded." (Emphasis added; citation omitted.) *Stratford Arms Co.* v. *Stratford,* 7 Conn. App. 496, 500, 508 A.2d 842 (1986). Since the Condominium Act clearly makes compliance with its requirements a condition precedent to attaining condominium legal status, its use of the word "shall" is mandatory. Accordingly, since the plaintiff has not filed condominium instruments pursuant to the provisions

of the statute, we conclude that Hall Manor is not a condominium within the meaning of the ordinance.

The plaintiff next claims that Hall Manor is eligible for municipal refuse collection because the complex is comprised of private dwelling units. According to the plaintiff, the ordinance's provision that "[t]he Department of Public Works is responsible for the collection, removal and disposal of garbage, refuse and other waste material from *all private dwellings* in the city" (emphasis added); West Haven Code § 119-1 (D); was intended by the city to be read broadly, encompassing any multi-unit residential complex unless otherwise specified within the ordinance. We do not agree with the plaintiff's interpretation of the city's intent.

"A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. *Duplin* v. *Shiels, Inc.,* 165 Conn. 396, 398–99, 334 A.2d 896 (1973) . . . . " *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151, 480 A.2d 519 (1984). " 'A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985).' *Orticelli* v. *Powers,* 197 Conn. 9, 13–14, 495 A.2d 1023 (1985)." (Citation omitted.) *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 399–400, 512 A.2d 152 (1986).

The phrase "all private dwellings" must be read in conjunction with the definition in the ordinance of "private dwellings." Even though the definition is obviously not all-inclusive, it is relevant to the plaintiff's claim since it deals with multi-unit complexes and specifically includes one type of multi-unit complex within its scope. That the city deemed it necessary to add this defini-

tion by amendment four months after the original act was enacted is significant to our interpretation of the phrase "all private dwellings."

"In determining the effect of a subsequent statutory amendment on earlier legislation, we are guided by well defined principles of statutory interpretation. We recognize the usual presumption that, in enacting a statute, the legislature intended a change in existing law. *Shelton* v. *Commissioner,* 193 Conn. 506, 513, 479 A.2d 208 (1984); *Vartuli* v. *Sotire,* 192 Conn. 353, 364 n.12, 472 A.2d 336 (1984); 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 22.30. This presumption, however, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case." *State* v. *Magnano,* 204 Conn. 259, 277, 528 A.2d 760 (1987).

The plaintiff presented no evidence to establish that the amendment was merely clarifying the original use of the phrase "private dwellings."[3] Absent such a showing, we abide by the presumption that the city, in adopting the amendment, intended to change the then existing law. Therefore, prior to the amendment, a residential condominium was not eligible for municipal refuse collection. Since a condominium is a type of multi-unit complex, the scope of "all private dwellings" does not, as the plaintiff argues, extend to all multi-unit complexes.

This determination by itself, however, does not fully address the plaintiff's second claim. The plaintiff also contends that the expansion of "private dwellings" to encompass condominiums is itself indicative of the city's intent that the phrase be interpreted broadly. The plain-

---

[3] An amendment that in effect construes and clarifies a prior statute must be accepted as a declaration of the meaning of the original act. *State* v. *Magnano,* 204 Conn. 259, 278, 528 A.2d 760 (1987); see also *Neyland* v. *Board of Education,* 195 Conn. 174, 180, 487 A.2d 181 (1985).

tiff maintains that the city intended this expansion to extend to all multi-unit complexes, unless specifically excluded by the ordinance. We are not persuaded. Absent evidence to the contrary, " ' "statutory itemization indicates that the legislature intended the list to be exclusive." ' " The B. F. Goodrich Co. v. Dubno, 196 Conn. 1, 6, 490 A.2d 991 (1985), quoting State v. Kish, 186 Conn. 757, 766, 443 A.2d 1274 (1982). Accordingly, we conclude that the city intended to include only one type of multi-unit complex within its definition of "private dwellings," i.e., condominiums.

The plaintiff's final claim is that the language of the ordinance implicitly provides for municipal refuse removal from apartment buildings consisting of four or fewer dwelling units. In reaching this conclusion, the plaintiff relies on the provision of the ordinance that states that "[t]he collection of garbage, refuse and other waste material from industrial, business and apartment buildings of more than four (4) dwelling units shall be the responsibility of the property owner[s]." Implicit in this statement, the plaintiff contends, is that refuse collection from apartment buildings with four or fewer dwelling units is the responsibility of the department of public works. The plaintiff argues further that each of the nineteen modules that comprise Hall Manor is such an apartment building, and that the complex is therefore entitled to the municipal refuse collection service. At oral argument, the plaintiff intimated that this claim is yet another way in which Hall Manor falls within the scope of "all private dwellings," i.e., the ordinance implicitly encompasses apartment buildings with four or fewer dwelling units in its phrase "private dwellings."[4] We disagree.

---

[4] Although the plaintiff in its brief attempts to make this claim in a context broader than the "private dwellings" argument, we will not address the broader claim because it was not presented to the trial court. See Practice Book § 4185.

" 'It is well settled that a statute must be applied as its words direct. *Dental Commission* v. *Tru-Fit Plastics, Inc.*, 159 Conn. 362, 365, 269 A.2d 265 [1970]; *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 265, 178 A.2d 537 [1962].' *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975)." *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). If the statutory language is clear and unambiguous, there is no room for construction. *Beloff* v. *Progressive Casualty Ins. Co.,* supra, 54; *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). With respect to the plaintiff's final claim, the definition of "private dwellings" in the ordinance is unambiguous: " 'Private dwellings' as used herein shall include all residential condominiums . . . . [Private dwellings] shall not include apartments . . . . " Since this language is clear, we shall not speculate as to the intent of the city in including the provision relied upon by the plaintiff.

There is no error.

In this opinion the other justices concurred.