[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant case is a suit for attorney's fees. In the amended complaint filed on December 26, 1990, there are four counts. The first and third counts allege an action in contract and an action of unjust enrichment respectively against Bozzuto's Carting Company, Inc. (hereinafter Carting) while the second and fourth counts do the same against Anthony S. Bozzuto (hereinafter Bozzuto). From the evidence presented and reasonable inferences CT Page 8089 drawn therefrom, the court finds that the facts set forth below were established.
 I.
The plaintiff law firm specializes in tax law. In 1990, approximately forty percent of its business related to wills and trusts. D. Richard DeSarbo (hereinafter DeSarbo) is a partner in the plaintiff firm. On March 22, 1990, Bozzuto and Kevin O'Donnell met with DeSarbo to review Bozzuto's existing estate plan. Kevin O'Donnell is a general agent for John Hancock Insurance Company and also operates a financial services organization. In 1990, O'Donnell was Bozzuto's financial advisor.
Both DeSarbo and O'Donnell envisioned the preparation of new estate documents. An insurance trust to be funded by a policy that Bozzuto would purchase from O'Donnell was one of the documents contemplated. Bozzuto is the principal shareholder of Carting and representation of the corporation by DeSarbo was also discussed at the initial meeting.
The estate plan that Bozzuto submitted for DeSarbo's review had been prepared by the Pellegrino law firm and consisted of the following documents: wills of Bozzuto and his wife Phyllis and family trusts and amendments thereto. DeSarbo also received a financial statement from Bozzuto and a summary of insurance policies on the lives of Bozzuto and his wife was furnished by Kevin O'Donnell. At the first meeting DeSarbo mentioned that his hourly rate was $185.00. No final amounts, however, were discussed for either the new estate plan or for the corporate work.
In the process of developing the new estate plan, DeSarbo met with Bozzuto and his wife. On May 10, 1990, DeSarbo sent copies of documents that he had prepared to Bozzuto with an explanatory memorandum. In an accompanying letter, DeSarbo wrote that after Bozzuto reviewed the documents, a meeting should be scheduled with Kevin O'Donnell and Andrew D'Agostino, Bozzuto's accountant, to go over the plan. The documents that were sent included wills and revocable trust indentures for Bozzuto and his wife, a separate irrevocable trust for Bozzuto and irrevocable insurance trusts with Bozzuto and his wife as grantors.
On June 8, 1990, the plaintiff's invoice in the amount of $5,000.00 for legal services pertaining to the new estate plan was mailed to Bozzuto. Subsequent to receiving this invoice, Bozzuto CT Page 8090 inquired of DeSarbo as to changes in the method of designating the independent trustee. DeSarbo made the requested changes and charged an additional $490.00 as shown in the invoice of August 24, 1990.
Kevin O'Donnell and Andrew D'Agostino received copies of the estate plan documents that DeSarbo had prepared. Bozzuto did not complain about the plaintiff's bill for the estate plan work until August or September of 1990. His complaint was that he had not authorized the preparation of the documents which have never been signed.
Bozzuto engaged DeSarbo to represent him in the purchase of a condominium. Actually another of the plaintiff's attorneys was present at the closing held on June 6, 1990. The sum of $580.00 was charged for services pertaining to the condominium as appears in the plaintiff's invoice dated July 13, 1990.
For personal work, the plaintiff's bills total $6,070.00 of which of $5,490.00 was attributed to the preparation of the estate plan documents and $580.00 was attributed to the acquisition of the condominium. In August or September, 1990, Bozzuto offered to pay only the condominium portion of the bill.
In the spring of 1990, DeSarbo at Bozzuto's request began to do legal work for Carting. On June 8, 1990, the plaintiff sent a bill for $6,500.00 predicated upon a recitation that the following work had been accomplished: "Tax and legal services rendered from April 30, 1990 through June 1, 1990, including the preparation of a lease with respect to the corporate premises, a cross purchase agreement among the shareholders in the corporation, pension planning proposals and calculations, and review of documentation regarding the proposed acquisition of Finocchio's, including all conferences with Attorney DeSarbo in connection with the foregoing, and all research regarding the tax treatment of customer lists and covenants not to compete." The lease and cross purchase agreement were introduced into evidence but the pension planning proposals were not. "Finocchio's" refers to Young Finocchio, a refuse company, whose commercial accounts and customer lists were subsequently purchased by Carting. On July 13, 1990, a new invoice increased by $1,040.00 to $7,450.00 because of review of a preliminary draft of the sales agreement pertaining to Young 
Finocchio and conferences between the attorneys was sent. On August 24, 1990 a third bill this time increased by $500.00 to $8,040.00 was mailed; the increase being due to a meeting of the CT Page 8091 lawyers.
Finally, on September 21, 1990, the plaintiff sent a fourth bill to Carting for $6,990.00 for "Tax and legal services rendered through September 6, 1990 in connection with the acquisition of Young and Finocchio Refuse Company including all conferences with Attorneys DeSarbo and Duncan in connection therewith and preparation of the purchase agreement, covenant not to compete, Bozzuto personal guarantee and bill of sale."
Attorney Basil Duncan represented Young Finocchio in the sale and purchase transaction. It was Attorney Duncan who prepared the "Agreement of Purchase And Sale" that was used. Attorney Duncan, however, was aided by the draft agreement that had been prepared by DeSarbo. At the closing, Attorney Duncan used the bill of sale and the personal guaranty of Bozzuto that DeSarbo had drafted. Attorney Duncan billed his client for fourteen hours of work at $120.00 per hour for a total of $1,680.00.
As matters turned out, DeSarbo did not attend the closing. He ceased his representation of Bozzuto and Carting before the closing was held for the professed reason that Bozzuto had not paid for the estate plan work. DeSarbo was succeeded by Attorney Andrew Amendola who received $550.00 for "preparation of closing documents and title search" and $650.00 as "closing fee for business purchase and personal representation." In 1990, Attorney Amendola's hourly rate was $140.00.
For business closings there was in 1990 a custom prevailing in New Haven County whereby the closing contract would be prepared by the buyer's attorney and the seller's attorney would prepare the bill of sale, covenant not to compete, personal guaranty on behalf of the buyer and tax clearance. Although DeSarbo, as the buyer's lawyer, prepared substantially all of the documents in draft or finished form, there was no showing that the parties intended the closing to be conducted contrary to the custom of the County of New Haven.
The documents prepared for Carting were not discussed with Bozzuto at least to the same extent as the documents that previously were prepared for his estate plan. This was especially true of the lease and cross purchase agreement the only two items that were unrelated to the acquisition of Young Finocchio Refuse Company. CT Page 8092
On October 22, 1990, Bozzuto wrote a letter on the stationery of Carting to the Grievance Committee. In the letter, Bozzuto complained about DeSarbo's apparent propensity to change and rewrite documents and especially about DeSarbo's fees. Bozzuto's letter was introduced into evidence by the plaintiff.
The plaintiff also called Kevin O'Donnell as a witness and placed in evidence a letter dated October 29, 1990 that he had written to the Grievance Committee at the request of DeSarbo. O'Donnell's letter refuted Bozzuto's allegations especially with respect to the estate plan documents. On cross-examination, however, O'Donnell testified that the fetter he had signed had been composed by DeSarbo, that portions of the letter were untrue and that he had other clients who had been upset by DeSarbo's fees.
Some further findings of fact appear, where relevant, elsewhere in this memorandum.
 II.
The claims of the plaintiff as against each defendant must be analyzed separately.
 A.
With respect to the second count of the complaint which seeks contractual damages against Bozzuto, there was an admission of liability for the fee of $580.00 that was owed for services rendered on the condominium purchase. As to the remainder of the second count, however, Bozzuto contends that the evidence does not support an express agreement and that the allegations do not encompass an implied contract. The argument about the implied contract seemingly rests upon the proposition that certain language in the second count namely "[b]eginning in March, 1990, the defendant agreed to pay the plaintiff for legal advice and services. . ." is consistent only with an express contract and is inconsistent with an implied one. The court disagrees.
A true contract can be of two types, express or implied in fact. "A contract implied in fact, like an express contract, depends on actual agreement." Coelho v. Posi-Seal International,Inc., 208 Conn. 106, 111 (1988); Therrien v. Safeguard Mfg. Co.,180 Conn. 91, 94 (1980). The plaintiff had the burden to prove, a preponderance of the evidence, that Bozzuto had agreed by words or deeds to have DeSarbo prepare the documents for the estate plan CT Page 8093 and to pay for them. Absent specific contract language, and there was apparently none here, whether a contract was made and the terms of that contract present questions of fact. Christensen v. BicCorporation, 18 Conn. App. 451, 454 (1989).
In the court's view, the plaintiff has satisfied its burden. At the first meeting, Bozzuto was told that the hourly rate was $185; subsequently in the course of developing the estate plan, DeSarbo met with Bozzuto and his wife; after receiving a substantial bill in June, 1990, Bozzuto asked about making changes in one or more documents concerning the method of designating a trustee. Although most of the work was included in the June, 1990, invoice, Bozzuto did not disclaim liability until August or September, 1990. Ordinarily when one is requested to render services in the usual course of that person's business or profession, an inference exists that the party requesting such services intends to pay for them. Butler v. Solomon, 127 Conn. 613,615 (1941). Moreover, even if no agreement resulted from the first meeting of DeSarbo and Bozzuto, the subsequent action of Bozzuto in seeking changes in the method of designating a trustee was cogent evidence of his intention to ratify what had been done. 3 Restatement (Second), Contracts, § 380 comment (a); see Young v.Data Switch Corp., 231 Conn. 95, 102 (1994).
Cases dealing with implied in fact contracts speak of a defendant's obligation to pay what the, services rendered by the plaintiff were reasonably worth. Bershtein, Bershtein Bershtein v. Nemeth, 221 Conn. 236, 242 (1992); Freda v. Smith,142 Conn. 126, 134 (1955); Collins v. Lewis, 111 Conn. 299, 304
(1930). Further, in light of Rule 1.5 of the Rules of Professional Conduct, a court should take special interest in whether an attorney's fee is reasonable. See Bizzoco v. Chinitz, 193 Conn. 304,310 (1984). The scope of judicial oversight respecting attorney-client fee arrangements is set forth in DiFrancesco v.Goldman, 127 Conn. 387 (1940). An attorney and his/her client can contract concerning fees and their agreement should not be set aside or the agreed compensation withheld unless the attorney perpetrates acts that result in an unconscionable advantage over the client, in which case a court of equity may grant relief, and the attorney will be limited to a reasonable charge for compensation without regard to the attempted fixation of the value of his/her services. 127 Conn. at 392-93.
In effect, Bozzuto claims that the plaintiff's charges are unconscionable in terms of the total amount and because no written CT Page 8094 notice of the hourly rate was sent to the client as required by Rule 1.5(b). A determination of whether an arrangement is unconscionable is a question of law based on all the facts and circumstances of the case. Cheshire Mortgage Service, Inc. v.Montes, 223 Conn. 80, 87 (1992); Emlee Equipment Leasing Corp. v.Waterbury Transmission, Inc., 31 Conn. App. 455, 461 (1993). After describing his services, DeSarbo was a competent witness to give his opinion as to their reasonable value. Anderson v. Zweigbaum,150 Conn. 478, 483 (1963). The court also may determine what is a reasonable attorney's fee from its own general knowledge and from the proceeding at issue. Bizzoco v. Chinitz, supra at 310; Pleinesv. Franklin Construction Co., 30 Conn. App. 612, 619 (1993). Given the nature and complexity of the documents prepared for Bozzuto's estate plan, the court finds that the hourly sums of $185.00 and $160.00 that the plaintiff in 1990 charged for the services of DeSarbo and other lawyers in the firm respectively were within the realm of reasonableness. After reviewing ledger cards and time sheets, see Bank of Boston, Connecticut v. Brewster, 42 Conn. Sup. 474,504-06 aff'd. 32 Conn. App. 215 (1993), the court finds, however, that adherence to these hourly figures requires that the plaintiff's invoice for personal services to Bozzuto be reduced from $6,070.00 to $6,029.50.
Remaining is the question of whether the plaintiff's invoice should be invalidated because of its failure to give Bozzuto written notice of the basis of the fee and the scope of the work as required by Rule 1.5(b). Assuming that Rule 1.5 is to be treated as a statute, the question can be answered by an ascertainment of whether the language of 1.5(b) is mandatory or directory.
The word "shall" that appears in 1.5(b) does not automatically create a mandatory duty. Hall Manor Owner's Assn. v. West Haven,212 Conn. 147, 152 (1989); Ruotolo v. Inland Wetlands Agency,18 Conn. App. 440, 448 (1989). The basic test used by our Supreme Court to determine whether a statutory section is mandatory or directory is whether the action it prescribes relates to a matter of substance or a matter of convenience. Hall Manor Owner's Assn.v. West Haven, supra at 152-53. When statutory language prescribes what is to be done but contains no penalty for noncompliance the matter is considered to be one of convenience or directory. Langanv. Weeks, 37 Conn. App. 105, 122 (1995). The court concludes that Rule 1.5(b) is such a measure.
The case of Marcus v. DuPerry, 25 Conn. App. 293 (1991) relied upon by Bozzuto does not provide contrary authority. First, CT Page 8095 because, aside from the plaintiff's right to recover, the decision was reversed by the Supreme Court. Marcus v. DuPerry,223 Conn. 484 (1992). Second, because the Appellate Court's opinion limited the plaintiff's professional conduct to matters such as credibility and held that whether the plaintiff violated the Rules of Professional Conduct was a matter for the Grievance Committee at least in the first instance. 25 Conn. App. at 297-98.
Contractual Damages in the amount of $6,029.50 are awarded on the second count to the plaintiff against Bozzuto individually. Therefore the fourth count need not be considered. The doctrine of unjust enrichment is not available where a remedy exists in an action on the contract. Providence Electric Co. v. Sutton Place,Inc., 161 Conn. 242, 246 (1971).
 B.
Much of what has been written about the plaintiff's action against Bozzuto is applicable to the action against Carting. Certain facts bear repeating. Bozzuto as president of Carting requested DeSarbo to perform legal services for the corporation especially with regard to the acquisition of Young a Finocchio with full knowledge of the $185.00 hourly rate. What weakens the plaintiff's claim for relief under a contract is a lack of evidence as to what was included in the request for representation. Put another way, there was no evidence to support a theory that DeSarbo was to undertake the preparation of every document and thus build up his hourly charges. On the contrary, the evidence is much more susceptible to the inference that Bozzuto expected the attorney's to be in accord with the custom, previously described, that in 1990 prevailed in New Haven County.
To be enforceable, an express as well as an implied in fact contract must be definite and certain as to its terms.Presidential Capital Corp. v. Reale, 231 Conn. 500, 507-08 (1994). The court emphasizes that this is a case where an agreement as to the purview of the work was not proven and not one where only the amount of compensation was undecided. See Id. at 508-09. Consequently, there can be no recovery in the plaintiff's claim for contractual damages against Carting on the first count.
"Unjust enrichment [as set forth in the third count], applies wherever justice requires compensation to be given for property or services rendered under a contract and no remedy is available by an action on the contract." Hartford Whalers Hockey Club v. UniroyalCT Page 8096Goodrich Tire Co., 231 Conn. 276, 282 (1994) quoting 5 S. Williston, Contracts (Rev. Ed.) § 1479. To recover in unjust enrichment, the plaintiff must prove that Carting received a benefit and unjustly did not pay for it and that the failure of payment was to the plaintiff's detriment. Barbara Weisman, Trusteev. Kaspar, 233 Conn. 531, 550 (1995). Whether a party was benefitted [benefited] and whether the refusal to pay was unjust are essentially factual questions. Hartford Whalers Hockey Club v.Uniroyal Goodrich Tire Co., supra at 283.
In unjust enrichment cases, damages are ordinarily based not on the loss to the plaintiff but on the benefit to the defendant. Where the claim is from an unenforceable contract, however, the contract price is evidence of the amount of the benefit. HartfordWhalers Hockey Club v. Uniroyal Goodrich Tire Co., supra at 285, 286. Previously mentioned were the four bills sent by the plaintiff to Carting. The first dated June 8, 1990 in the amount of $6,500.00 was for the lease to the corporate premises, the cross purchase agreement, pension planning proposals and a review of the documentation regarding the personal acquisition of Young 
Finocchio including tax treatment and covenants not to compete. The second dated July 31, 1990 added $1,040.00 to the $6,500.00 due for a total of $7,540.00 and was for services rendered from June 1, 1990 through July 5, 1990 in connection with the acquisition of the commercial accounts of Young Finocchio including a review of a preliminary draft of the sales agreement and conferences with Attorneys DeSarbo and Duncan. The third bill dated August 24, 1990 added $500.00 to the $7,540.00 increasing the amount owed to $8,040.00. It was for services rendered in connection with the acquisition of the commercial accounts of Young Finocchio including a conference of Attorneys DeSarbo and Duncan on July 11, 1990.
Although Carting had not made any payments, the fourth and final bill sent on September 21, 1990, the date of the Young 
Finocchio closing and after DeSarbo terminated the attorney-client relationship, was for only $6,990.00. It purported to be for legal services rendered through September 6, 1990 in connection with the acquisition of Young Finocchio including all conferences of Attorneys DeSarbo and Duncan in connection therewith and preparation of the purchase agreement, covenant not to compete, personal guarantee by Bozzuto and bill of sale.
The four bills contain some overlap. The fourth one, however, stands out as the plaintiff's charge for the Young Finocchio CT Page 8097 transaction unencumbered by references to other services. From its stated amount of $6,990.00 the court subtracts $1,000.00 for documents that in the normal course of events should have been prepared by the lawyer for the other client. The court will also subtract $308.25 being the difference between the plaintiff's admitted billing of $348.75 in excess of $185.00 per hour and $40.50 subtracted from Bozzuto's personal invoice because of such overbilling. In the acquisition of Young Finocchio, Carting was benefitted [benefited] to the extent of $5,681.75 because of the plaintiff's services.
For the cross purchase agreement and the indenture of lease, the two documents DeSarbo prepared for Carting that were unconnected with the acquisition of Young Finocchio the court finds that a benefit of $1,500.00 accrued to the former client. These documents may not have been adequately discussed conversations between DeSarbo and Bozzuto but they are of value to Bozzuto's present or future estate plans and to the continuance of Carting after Bozzuto's death or in the event of his disability.
 III.
Judgment is rendered for the plaintiff against the defendant Anthony S. Bozzuto in the amount of $6,029.50 on the second count. Judgment is rendered for the plaintiff against the defendant Bozzuto's Carting Company, Inc. in the amount of $7,181.75 (5,681.75 + 1,500.00) on the third count. The plaintiff shall also recover its taxable costs.
Jerrold H. Barnett, Judge