[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant Windsor Locks Planning and Zoning Commission ("Commission) granting the intervening defendants' Winchester Partnership and Park, Plaza, Inc.'s application to amend a previously approved special permit. The amended permit allows the intervening defendants to increase the number of authorized parking spaces at its indoor valet parking business.
The basic facts are not disputed. The plaintiffs and the intervening defendants are business competitors who operate valet parking services near Bradley International Airport in Windsor Locks. On November 1, 1990, the Commission approved the intervenor's application to amend its zoning regulations by adopting Section 408, "Adaptive Reuse Regulation." This section allows, by special permit, in certain industrial zones, "the rehabilitation or adaptive reuse of vacant, deteriorated or under utilized buildings." The following conditions are required:
1. One or more contiguous parcels with . . . buildings containing combined . . . 150,000 square feet.
2. Average monthly or annual vacancy of 50% or more; for . . . 24 months preceding the date of application.
3. Substantial benefit to the Town.
4. Compatibility with the surrounding area.
5. Substantial inability to utilize the property under the provisions of the industrial zoning districts.
Section 408 also provides that the "Commission may permitany use which it determines is consistent with thecriteria . . . even if said use is not otherwise permitted inChapter IV of these Regulations." (emphasis supplied.) Although valet parking is not a permitted use under Chapter IV, the Commission and those commenting at public hearings understood the Commission was adopting a regulation which would eventually CT Page 13112 permit valet parking as a use under § 408.
Winchester Partnership owns a building containing 456,425 square feet at 295 Ella Grasso Turnpike in Windsor Locks; a portion of the premises is leased to Park Plaza, Inc. In November, 1990, under § 408, intervening defendants Winchester Partnership and Park Plaza, Inc. applied for a special permit for the adaptive reuse of a portion of its building as an indoor parking garage and conference center. The Commission determined that Park Plaza's application complied with all requirements and conditions and unanimously approved the special permit in January, 1991. A permit was issued for 800 parking spaces within "Building One", which contained approximately 258,000 square feet.
In March, 1993, the Defendants sought approval to amend the special permit, to increase by 348 the allotted number of vehicles previously authorized. The application sought to combine the 258,000 square feet of use in "Building 1" with 82,320 square feet available in "Building 3" and 42,505 square feet available in "Building 5". The Commission approved the amendment on June 14, 1993. On July 8, 1993, the plaintiffs, in separate actions, appealed the Commission's decision. The actions were later joined.
Thereafter, the defendants' motion to dismiss, alleging that the plaintiffs were not aggrieved by the defendants' actions, was denied by the Court, Sullivan, J., who found the following facts which guide this court's determination: "Valet parking is described . . . as a parking activity whereby the `customer's automobile is checked in. Their luggage and their person are transported to the airport. Upon completion of their journey they are picked up at the airport and returned to Park Plaza to reclaim their vehicle.'
"This description aptly describes the business activity of each of the plaintiffs, and the business activity of the intervening defendant. The only difference between the activity of the intervening defendant, on the one hand, and that of the plaintiffs on the other hand, is that the intervening defendant conducts the activity indoors, whereas the plaintiffs conduct the same activity outdoors . . .
"The Zoning Ordinances of the Town of Windsor Locks do not permit `valet parking' in any zone, either as a permitted use or CT Page 13113 a special use permit. The use by the plaintiffs have existed for many years. Surprising as it may seem that such uses are not permitted, bearing in mind that natural adjunct of such activity, as an essential service to the airport, and their long established use, the failure to allow the uses as specifically permitted uses or as special permit uses has the legal and obviously intended effect of restricting the expansion or enlarging of this activity in the vicinity of the airport.
"It is elementary that the plaintiffs, operators of the outdoor valet parking facility, which long antedated the present zoning ordinance, are not legally enabled to enlarge or expand their existing uses. It is clear that they cannot demonstrate `exceptional difficulty or unusual hardship' as required for such expansion or enlargement . . .'
"The absence of valet parking as a specifically permitted use or as a special permit use, has been referred to by the parties as a `moratorium' on valet parking, which is a proper vernacular description of the effect of the zoning ordinance. Nowhere in the record or in the evidence does it appear that it is the intent of the ordinance to `reduce nonconforming uses to conforming uses with all the speed justice will tolerate.'" Memorandum of Decision, October 26, 1994 pp. 3-4 (Sullivan, J.) (citations omitted.)
 I.
There are two issues before the court. The first is plaintiffs' claim that the Commission did not have a substantial basis for concluding that the plaintiffs satisfied the criteria for amending their special permit. The second is a question raised sua sponte by the court: whether the Commission improperly approved the application to amend the special permit in light of the fact that valet parking is not a permitted use under the applicable regulations.
 A.
Plaintiffs' principal claim in this appeal is that the defendant Commission improperly granted the defendants' application to amend the special permit in that the plaintiffs did not satisfy the conditions set forth in § 408 of the Adaptive Reuse Regulation. In particular, the plaintiffs argue that the defendant Commission erroneously concluded that: (1) CT Page 13114 pursuant to § 408 A.1., the defendants had "one or more contiguous parcels with vacant, deteriorated or under utilized building containing combining gross floor area in excess of 150,000 square feet; and (2) pursuant to § 408 A.2., the "average monthly or annual vacancy" of the building was "50 percent or more of the existing gross floor area for a period of twenty four (24) months or more immediately preceding the date of application."
The plaintiffs claim that under both § A.1 and A.2, the Commission should have included in its calculations the amount of space occupied by the defendants since the special permit was first granted. If that space were included in the relevant calculations, the gross floor area would not exceed 150,000 square feet and the occupancy rate at the time of the application for the amended permit would not exceed 50%. The defendants, on the other hand, argue that because the application to amend the special permit in effect relates back to the original application, the relevant measure is the size of the gross floor area and the vacancy rate prior to the original permit having been granted and the defendants having taken occupancy. Under that test, the vacancy rate, as the Commission already determined when it granted the initial special permit, exceeded 50% and the gross floor area exceeded 150,000 square feet.
Resolution of this dispute involves an interpretation of § 408. Interpretation of a regulation involves the application of the same principles used in interpreting a statute. Hall Manor Owner's Assoc. v. City of West Haven,212 Conn. 147 (1989). "In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature."Villaincourt v. New Britain Machine, 224 Conn. 382. "In seeking to discern that intent we look to the words of the statute itself, to the legislative history and circumstances surrounding the enactment, to the legislative policy it was designed to implement and to its relationship to existing legislation."State v. McVeigh, 224 Conn. 593, 607 (1993).
We start with the language in the regulation. Generally, "when the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." WestHartford Interfaith v. Town Council, 228 Conn. 498, 508 (1994). Further, the statute must be interpreted according to its plain and ordinary meaning. "When the language of a statute is unclear, CT Page 13115 we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve. A statute should not be interpreted to thwart its purpose." Id.
Neither the language of § 408 nor any other provisions of the Windsor Locks Zoning Regulations address the issue raised in this appeal, namely, whether the application to amend the special permit relates back to the initial application or is in the nature of an original application such that the conditions for approval must be satisfied at the time the amendment is granted.
Under the plaintiffs' interpretation, the proposed expansion of the already existing valet parking operation would be prohibited because, including the plaintiffs' present use of the premises, the minimum space and vacancy requirements are not met. While their argument has superficial appeal, on closer inspection, that claim, if adopted, ignores the fact that the Commission could have originally approved a special permit application that would have authorized the use of the same amount of space as the plaintiffs now seek to utilize. Given the evident purpose of the regulation — encouraging the use of large, outdated structures — no useful purpose would be served by concluding that an applicant who does not initially seek to use the entire available space is prohibited from seeking an expansion of the approved use unless the space again becomes under utilized for a 24 month period.
In this case, there is no evidence to suggest that approval of the application to amend the special permit will result in substantial structural alterations; create traffic flow problems or otherwise pose a danger to the health, safety or welfare of the community. Housatonic Terminal Corporation v. Planning andZoning Board of Milford, 168 Conn. 304, 306 (1975). In the absence of such a showing, the Commission reasonably exercised its discretion by granting the plaintiff's application.Daughter's of St. Paul Inc. v. Zoning Board of Appeals of Townof Trumbull, 17 Conn. App. 53, 68 (1988). While there may be situations, as plaintiffs argue, where so much time has elapsed between the granting of the original permit and the application to amend it; or the nature of the use under the amended application is so substantially different than the original use, that it would be inappropriate to approve an amendment to the special permit, this case does not present those facts. CT Page 13116
The plaintiffs also argue that the defendants failed to satisfy the requirements of § 408 A. 3, 4 and 5. A review of the record and briefs indicates that there was an adequate basis for the Commission concluding that the proposed expansion (1) would constitute a "substantial benefit to the town; (2) would be "compatibl[e] with the surrounding area; and (3) that the defendants demonstrated a "substantial inability to utilize the property under the provisions of the industrial zoning districts." The Commission's conclusion will not be disturbed.Id.
 B.
The final issue is one raised by the Court, sua sponte, at oral argument: whether § 408 is defective in that it does not require, as a condition of the Commission's granting a special permit, that the proposed use be specifically authorized by the zoning regulations, but instead allows the Commission to grant a permit for "any use which it determines is consistent with the criteria . . . even if said use is not otherwise permitted in Chapter IV of these regulations."
As Judge Sullivan found in his ruling denying the defendant's motion to dismiss, "[t]he zoning ordinances of the Town of Windsor Locks do not permit `valet parking' in any zone, either as a permitted use or a special use permit. . . . The absence of valet parking as a specifically permitted use or as a special permit use, has been referred to by the parties as a `moratorium' on valet parking, which is a proper vernacular description of the effect of the zoning ordinance." Memorandum of Decision, supra,3-4.
Although valet parking is not a permitted use in any zone in Windsor Locks, § 408, by its terms, confers unlimited discretion on the Commission to deem valet parking, or any other use except residential uses and retail package stores, a permitted use for the purpose of granting a special permit.[1]
This broad authority is inconsistent with the long established requirements for special permit approval.
"In order for an administrative agency to approve a special permit, it must determine that (1) the proposed use of the property is expressly permitted under the zoning regulations . . ." Fuller, Land Use Law and Practice, § 5.1, p. 111. See, also, Housatonic Terminal Corporation v. PlanningCT Page 13117and Zoning Board of City of Milford, 168 Conn. 304, 307 (1975). "The zoning regulations must list for each zone where they are allowed the specific uses allowed by special permit." However, "[i]t is clear that the agency having authority to grant special permits cannot determine them on a case by case basis and allow uses not specifically allowed in the zoning regulations. A zoning commission also cannot grant a special permit to engage in an activity which is otherwise prohibited in all zones by the zoning regulations. The agency also cannot grant a special permit for any use where the zoning regulations do not contain any standards to determine whether the special permit should be granted." Fuller, Land Use Law and Practice and case cited therein, supra, 111-112.
In W A T R, Inc. v. Zoning Board of Appeals, 158 Conn. 196
(1969), the Supreme Court considered the almost identical issue raised in this case. In W A T R, the plaintiff applied to the Bethany Zoning Board of Appeals for a permit to erect a television transmission tower. Although the tower was not a permitted use under the regulations, the plaintiff claimed that the catchall provision which authorized a special permit for "any other uses not specifically permitted hereunder and not specifically prohibited under Section 8 of these regulations," conferred authority on the Board to approve the tower.
In rejecting the plaintiff's argument, the Supreme Court stated, "a special exception allows a property owner to put his property to a use which the regulations expressly permit under the conditions specified in the zoning regulations themselves. The zoning regulations, and not the board, determine what uses may be allowed as special exceptions. The function of the board in this connection is to determine whether or not a proposed use falls within one of the special exceptions expressly permitted by the regulations." Id., 200.
The Court then rejected the claim that the broad language in the Bethany regulation authorized the Board to grant a special permit for a use not specifically authorized in the regulations. "Section 4.1(1) of the regulations purports to confer on the zoning board of appeals the power to determine what other uses may be allowed, and it does not limit the board in any way to a determination of whether or not a proposed use falls within one of the special exceptions expressly permitted by the regulation. The planning and zoning commission in adopting this regulation had no authority to delegate such broad power to the board of CT Page 13118 appeals. The attempt to do so was a violation of the express provisions of § 8-2 of the General Statutes and the holdings of this court . . ." Id. (internal quotations and citations omitted.)
Section 408 contains the same broad, expansive language that was found lacking in W A T R. As in W A T R, the language of § 408 confers virtually unlimited discretion on the Commission to determine which uses are, or are not, permitted uses. Thus, although valet parking is otherwise not a permitted use under the Regulations, the Commission has plenary authority to deem it a permitted use for the purpose of granting a special permit. It is for this reason that § 2.4.4 suffers from the same flaw identified in W A T R.
As previously noted, this matter involves an application to amend an already approved special permit. At the time of the application for and consideration of the original special permit neither the plaintiff nor the defendants addressed the authority of the Commission to grant the special permit in the absence of specific language in § 408 indicating that the proposed use is expressly permitted under the zoning regulations. Under these circumstances this court has no authority to review the original permit. That permit is valid and presently remains in full force and effect. However, the validity of the amended special permit is properly before the court. Because the language of § 408 is impermissibly broad, thereby vesting the defendant with unlimited discretion to determine what uses, if any, are authorized as special permit uses, it was error for the defendant to approve the amendment of the special permit. W A T R v.Zoning Board of Appeals, supra.
The plaintiff's appeal is sustained.
Robert L. Holzberg, J.